# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### JEFFERSON CITY DIVISION

| | |
|---|---|
| TAMMY REED, | Case No.: 2:24-cv-04152-BCW |
| Plaintiff, | |
| v. | |
| MISSOURI DEPARTMENT OF CORRECTIONS, et al., | |
| Defendants. | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO THE MDOC DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I.     Introduction ......................................................................................................... 1

II.    Procedural Status and Summary of Plaintiff's Claims ...................................... 3

III.   Summary Judgment Standard ............................................................................ 3

IV.    Genuine Issues of Material Fact Preclude Summary Judgment on Plaintiff's Breach of Contract Claim (Count 1) ................................................................................... 4

      A.  MDOC has previously admitted that a State waives sovereign immunity when it enters a valid contract. ...................................................................................... 4

      B.  Questions of fact exist as to whether Brandon is a third-party beneficiary of the Centurion-MDOC Medical Services Contract. .................................................... 4

      C.  Fed. R. Civ. P. 8(d)(2) permits Plaintiff to argue alternative claims to the jury. .......... 6

V.     Official Immunity Does Not Bar Plaintiff's Claims Claim for Negligent Retention of a Private Contractor (Count 2) and Wrongful Death (Count 11). ..................................... 7

      A.  The Supervisor Defendants are not entitled to official immunity on Count 2 (Negligent Retention of Centurion) or Count 11 (wrongful death) because they acted with malice or bad faith. ...................................................................................... 7

          1.  The Supervisor Defendants acted with malice in the continued retention of Centurion (Count 2). ...................................................................... 8

          2.  The Supervisor Defendants are not entitled to official immunity for Wrongful Death (Count 11). ...................................................................... 9

      B.  The Correctional Officers are not entitled official immunity for Wrongful Death (Count 11). ...................................................................................... 11

          1.  The Correctional Officers were required to perform multiple ministerial duties, and thus are not entitled to official immunity. ................................. 11

          2.  The Correctional Officers are not entitled to official immunity because they acted with malice. ...................................................................... 14

VI.    Genuine Issues of Material Fact Preclude Summary Judgment for Plaintiff's § 1983 Excessive Force Claim (Count 3). ...................................................................... 16

      A.  Plaintiff's constitutional claim for Excessive Force did not abate upon Brandon's death. ...................................................................................... 16

      B.  A reasonable jury could find all Correctional Officers liable for excessive force ...... 17

      C.  Defendant Witt's deployment of Riot Pepper Spray twice while Brandon was in a confined space and not a threat to anyone's safety was not a "tempered response." ....... 19

      D.  Defendants are not entitled to qualified immunity from the excessive force claim. .. 21

VII.     Genuine issues of material fact preclude summary judgment on Plaintiff's Section 1983 claims (Counts 6, 7, and 8) against the Supervisor Defendants and Correctional Officers in their individual capacities........................................................................................................................... 21

A.  The Supervisor Defendants are liable under § 1983 for their personal involvement.  22

B.  The Correctional Officers are liable under § 1983 for their personal involvement.... 24

VIII.    Genuine Issues of Material Fact Preclude Summary Judgment On  Plaintiff's Equal Protection Class-Of-One Claim (Count 5)........................................................................................ 25

IX.      Defendants Are Not Entitled to Qualified Immunity on Plaintiff's Deliberate Indifference Claim (Count 4). ...................................................................................................................... 26

X.       Defendants Are Not Entitled To Qualified Immunity On Count 8 (Deprivation Of Companionship). ........................................................................................................................ 27

XI.      Plaintiff's Lost Chance of Recovery and Survival Claim (Count 10) Survives Summary Judgment. ................................................................................................................................ 28

XII.     The Record Demonstrates that the MDOC Defendants Violated the Missouri Sunshine Law (Count 12). ........................................................................................................................ 29

XIII.    Conclusion ......................................................................................................... 30

# TABLE OF AUTHORITIES

**CASES**

*ACLU of Mo. Found. v. Mo. Dep't of Corr.*,
  504 S.W.3d 150 (Mo. Ct. App. 2016) ....................................................................30

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .........................................................................................4

*Babcock & Wilcox Co. v. Parsons Corp.*,
  430 F.2d 531 (8th Cir. 1970) ...........................................................................25

*Brandy v. City of St. Louis*,
  75 F.4th 908 (8th Cir. 2023) ........................................................................7, 15

*Burns v. Eaton*,
  752 F.3d 1136 (8th Cir. 2014) .......................................................................18, 21

*Charleston v. Bd. of Trs.*,
  741 F.3d 769 (7th Cir. 2013) ..........................................................................25

*Cherry v. Crow*,
  845 F. Supp. 1520 (M.D. Fla. 1994) ...................................................................6

*Childs v. Brummet*,
  No. 4:20-00814-CV-RK, 2021 U.S. Dist. LEXIS 229710 (W.D. Mo. Dec. 1, 2021) ...............16

*Crooks v. Nix*,
  872 F.2d 800 (8th Cir. 1989) ..........................................................................22

*Draper v. City of Festus,*
  4:11cv1652 TCM, 2013 U.S. Dist. LEXIS 148122 (E.D. Mo. Oct. 15, 2013)..........................29

*Engquist v. Or. Dep't of Agric.*,
  553 U.S. 591 (2008) ........................................................................................26

*Erby v. St. Louis Cnty.*,
  708 S.W.3d 175 (Mo. Ct. App. 2025) ..................................................................17

*Est. of Taylor v. Denver Health & Hosp. Auth.,*
  No. 1:23-cv-02355-CNS-KAS, 2024 U.S. Dist. LEXIS 149013 (D. Colo. Aug. 20, 2024) .....24

*Estate of Gilliam v. City of Prattville*,
  639 F.3d 1041 (11th Cir. 2011) ........................................................................16

*Estelle v. Gamble*,
  429 U.S. 97 (1976) .......................................................................................5, 27

*Farmer v. Brennan*,
  511 U.S. 825 (1994)........................................................................................27

Case 2:24-cv-04152-BCW    Document 293    Filed 05/04/26    Page 4 of 40

*Fitzgerald v. Williamson,*
  787 F.2d 403 (8th Cir. 1986) ...................................................................................28

*Foster v. Armontrout,*
  729 F.2d 583 (8th Cir. 1984) ...................................................................................16

*Hall v. Acker,*
  367 Ga. App. 411–17, 885 S.E.2d 266 (2023) ........................................................13

*Harlow v. Fitzgerald,*
  457 U.S. 800 (1982) .................................................................................................21

*Harmon v. Preferred Fam. Healthcare, Inc.,*
  125 F.4th 874 (8th Cir. 2025) ..................................................................................13

*Headley v. Ceturion of Mo. LLC,*
  No. 2:23-CV-52 HEA, 2025 U.S. Dist. LEXIS 62184 (E.D. Mo. Mar. 31, 2025) ..............12, 13

*Hejnal v. U.S. Xpress, Inc.,*
  No. 4:17-CV-2557 CAS, 2018 U.S. Dist. LEXIS 11304 (E.D. Mo. Jan. 24, 2018) ..................8

*Hoops v. Medical Reimbursements of Am., Inc.,*
  No. 4:16-cv-01543-AGF, 2018 U.S. Dist. LEXIS 34257 (E.D. Mo. Mar. 2, 2018) ..................5

*Hope v. Pelzer,*
  536 U.S. 730 (2002)............................................................................................17, 18

*Hudson v. McMillan,*
  503 U.S. 1 (1992)......................................................................................................21

*Hynes v. Mo. Dep't of Corr.,*
  689 S.W.3d 516 (Mo. Ct. App. 2024) .................................................................29, 30

*Jackson v. Nixon,*
  747 F.3d 537 (8th Cir. 2014) ...................................................................................22

*Johnson v. Leonard,*
  929 F.3d 569 (8th Cir. 2019) ...................................................................................26

*Jones v. Shields,*
  207 F.3d 491 (8th Cir. 2000) ...................................................................................20

*L.A.C. v. Ward Parkway Shopping Ctr. Co., L.P.,*
  75 S.W.3d 247 (Mo. 2002) ....................................................................................5, 6

*Laughlin v. Perry,*
  604 S.W.3d 621 (Mo. 2020) .....................................................................................14

*Lawrence v. Bowersox,*
  297 F.3d 727 (8th Cir. 2002) ..............................................................................18, 19

*Lehr v. Robertson*,
  463 U.S. 248 (1983) ...............................................................................27

*Lundy v. Hancock Cnty.*,
  890 S.E.2d 92 (Ga. Ct. App. 2023) .......................................................12

*Malley v. Briggs*,
  475 U.S. 335 (1986) ...............................................................................21

*Markham v. Fajatin*,
  325 S.W.3d 455 (Mo. Ct. App. 2010) .....................................................29

*Mathers v. Wright*,
  636 F.3d 396 (8th Cir. 2011) ............................................................25, 26

*McNamara v. Picken*,
  950 F. Supp. 2d 125 (D.D.C. 2013) .........................................................6

*Mo. Corr. Officers Ass'n v. Mo. Dep't of Corr.*,
  No. 10-4168-CV-NKL, 2011 U.S. Dist. LEXIS 54731 (W.D. Mo. May 23, 2011) ...................4

*Moore v. Corizon, LLC, No.*
  4:15-CV-597 RLW, 2015 U.S. Dist. LEXIS 135328 (E.D. Mo. Oct. 5, 2015) ...........................6

*Moore v. Duffy*,
  255 F.3d 543 (8th Cir. 2001) .....................................................................4

*Myers v. Morris*,
  810 F.2d 1437 (8th Cir. 1987) .................................................................28

*Nolan v. Thompson*,
  521 F.3d 983 (8th Cir. 2008) ...................................................................25

*Ortiz v. City of Chicago,*
  656 F.3d 523 (7th Cir. 2011) ....................................................................27

*Payton v. City of St. Louis,*
  No. 4:20-cv-00861-SEP, 2021 U.S. Dist. LEXIS 63446 (E.D. Mo. Mar. 31, 2021) .................15

*Pearson v. Callahan*,
  555 U.S. 223 (2009) ...........................................................................21, 26

*Phillips v. Jasper Cnty. Jail*,
  437 F.3d 791 (8th Cir. 2006) ...................................................................26

*Phillips v. Norris*,
  320 F.3d 844 (8th Cir. 2003) ...................................................................26

*Rhodes v. Chapman*,
  452 U.S. 337 (1981) ...............................................................................17

*Robertson v. Wegmann*,
  436 U.S. 584 (1978) ........................................................................................ 16

*Schaub v. VonWald*,
  638 F.3d 905 (8th Cir. 2011) ...........................................................................27

*Scott v. Harris*,
  550 U.S. 372 (2007) ..........................................................................................4

*Southers v. City of Farmington*,
  263 S.W.3d 603 (Mo. 2008) ............................................................................11

*State ex rel. Love v. Cunningham ex rel. Ludwick*,
  689 S.W.3d 489 (Mo. 2024) .................................................................7, 11, 14

*Stevens v. Goord*,
  535 F. Supp. 2d 373 (S.D.N.Y. 2008) ...............................................................6

*Taylor v. St. Louis Cnty.*,
  No. 4:24-cv-00034-AGF, 2024 U.S. Dist. LEXIS 123942 (E.D. Mo. July 15, 2024) ..............15

*Tlamka v. Serrell*,
  244 F.3d 628 (8th Cir. 2001) ...........................................................................22

*Treats v. Morgan*,
  308 F.3d 868 (8th Cir. 2002) ...........................................................18, 19, 20, 21

*Twiehaus v. Adolf*,
  706 S.W.2d 443 (Mo. 1986) ............................................................................ 14

*V.S. DiCarlo Constr. Co. v. State*,
  485 S.W.2d 52 (Mo. Banc 1972) ......................................................................4

*Wages v. Young*,
  261 S.W.3d 711 (Mo. App. W.D. 2008) ............................................................7

*Walker v. Bowersox*,
  526 F.3d 1186 (8th Cir. 2008) .........................................................................18

*Williams v. Benjamin*,
  77 F.3d 756 (4th Cir. 1996) .............................................................................18

*Willowbrook v. Olech*,
  528 U.S. 562 (2000) ........................................................................................25

*Zygler v. Hawkins Constr.*,
  609 S.W.3d 61 (Mo. Ct. App. 2020) ..................................................................6

**STATUTES/RULES**

42 U.S.C. § 1983 ..................................................................................3, 16 21

Fed. R. Civ. P. 8(d)(2)..............................................................................................6

Fed. R. Civ. P. 56(a) ...............................................................................................3

R.S. Mo. § 217.025(3) ...........................................................................................22

R.S. Mo. § 537.021.1 .............................................................................................29

R.S. Mo. § 537.030 ...............................................................................................16

R.S. Mo. § 537.080 ...............................................................................................28

R.S. Mo. § 610.023 et seq....................................................................................29, 30

R.S. Mo. § 610.027.3 .............................................................................................29

# I. Introduction

This case arises from the preventable death of Brandon Pace while in the custody of the Missouri Department of Corrections ("MDOC"). Defendants[1] seek summary judgment by minimizing disputed facts and isolating individual acts, but the record shows a continuous course of conduct from which a reasonable jury could find liability on multiple grounds.

After learning that Brandon had ingested drugs, Defendants failed to provide the prompt medical care required by policy and the Constitution. Instead, they escalated the risk of harm: Brandon was sprayed twice with a riot-grade chemical agent while confined in a small cell, despite posing no threat. He was denied timely decontamination, left in a contaminated environment, and then ignored for hours as he exhibited obvious signs of medical distress—pleading for help, stating he could not breathe, and engaging in self-harming behavior. No meaningful intervention occurred before his death.

Defendants' motion for summary judgment should be denied. First, Plaintiff's breach of contract claim (Count 1) survives summary judgment because sovereign immunity does not bar claims arising from valid state contracts. MDOC admitted the medical service contract with Centurion exists to provide medical care to inmates, an identifiable class of intended beneficiaries, and has failed to produce an authenticated, executed contract containing language limiting inmates' third-party beneficiary status.

Second, Defendants are not entitled to official immunity on Plaintiff's state-law claims for negligent retention (Count 2) and wrongful death (Count 11). A reasonable jury could find that the Supervisor Defendants acted with malice in (i) retaining Centurion despite known,

---

[1] Plaintiff concedes that Trevor Foley, Valarie Moseley, Travis Terry, Kacee Salzman, Jo Moller, and Earl Roach be dismissed. "Supervisor Defendants" is defined to include Anne Precythe, Matt Sturm, Brock Van Loo, and for purposes of the Sunshine Law Claim, Matt Briesacher. "Correctional Officers" is defined to include Brock Van Loo, Terry Payne, Randy Witt, Jason Kimbell, John Samuel, Curtis Smith, Lane Barker, Billie Webb, Stephen Ward, Leonard Montes, Robert May, and Edward Endsley. For purposes of this motion, "Defendants" or "MDOC Defendants" are defined to include MDOC, the Supervisor Defendants, and the Correctional Officers.

repeated failures to provide adequate medical care, as well as (ii) in their failure to train and allow a policy of untrained officers to punish inmates and withhold medical care. As to wrongful death, the Correctional Officers are not shielded by official immunity because they violated multiple ministerial duties, such as mandatory medical notification, constant observation, and required decontamination, and because the record supports a finding of malice or bad faith.

Third, Plaintiff's § 1983 excessive force claim (Count 3) presents classic jury questions. The claim did not abate upon Brandon's death where the use of force contributed to his death; applying Missouri abatement law to extinguish the claim would conflict with federal law. A reasonable jury could find that Defendants' conduct, particularly the use of riot-grade chemical spray in a confined space followed by the denial of decontamination and inadequate medical care, was not a good-faith effort to maintain discipline, but rather excessive and punitive.

Fourth, Plaintiff's remaining § 1983 claims (Counts 4, 5, 6, 7, and 8) also survive summary judgment. The record supports findings of deliberate indifference to serious medical needs, unconstitutional policies and failures to train or supervise, and personal involvement by both supervisory and correctional officers. Plaintiff's equal protection class-of-one claim is supported by evidence that Brandon was treated differently from similarly situated inmates without any rational basis. Qualified immunity does not apply where, as here, the constitutional violations are clearly established and factually disputed.

Fifth, Plaintiff's lost chance of recovery claim (Count 10) may proceed as an alternative theory under both Missouri law and Federal Rule of Civil Procedure 8(d)(2). The record supports a finding that Defendants' conduct caused distinct, non-fatal injuries and deprived Brandon of a meaningful chance of survival, creating a triable issue for the jury.

Finally, Plaintiff's Missouri Sunshine Law claim (Count 12) is supported by evidence of repeated, knowing violations. MDOC processed multiple records requests, yet failed to produce key materials and or comply with statutory response requirements. Because genuine issues of material fact exist as to each claim, summary judgment should be denied.

2

## II. Procedural Status and Summary of Plaintiff's Claims

The MDOC Defendants filed a Motion for Judgment on the Pleadings on Plaintiff's Second Amended Complaint ("SAC"). ECF 222. In response, Plaintiff agreed to dismiss Counts 6 and 7 as to MDOC and the individual MDOC defendants for monetary relief in their "official capacities," but requested leave to file a Third Amended Complaint substituting "individual capacity" claims against the individual defendants in Counts 3, 4, 6 and 7. ECF 233 at 2, 10. On April 13, 2026, this Court denied the Motion for Judgment on the Pleadings but did not address Plaintiff's request to amend. ECF 277. The MDOC Defendants filed for summary judgment that same day. Thus, with this motion, Plaintiff filed a Motion for Leave to Amend consistent with her prior request.

The following chart lists the live claims and MDOC Defendants for ease of reference:

| Count | Nature of Claim | Against MDOC Defendants |
|---|---|---|
| 1 | Breach of Contract –Third Party Beneficiary | MDOC |
| 2 | Negligent Retention of a Private Contractor | Supervisor Defendants |
| 3 | 42 U.S.C. § 1983: Excessive Force | Correctional Officers |
| 4 | 42 U.S.C. § 1983: Deliberate Indifference | Correctional Officers |
| 5 | 42 U.S.C. § 1983: Equal Protection Class of One | Supervisor Defendants and Correctional Officers |
| 6 | 42 U.S.C. § 1983: Unconstitutional Policies, Customs & Practices | Supervisor Defendants and Correctional Officers |
| 7 | 42 U.S.C. § 1983: Failure to Train or Supervise | Supervisor Defendants and certain Correctional Officers, i.e. Brock Van Loo, Terry Payne, John Samuel |
| 8 | 42 U.S.C. § 1983: Deprivation of Companionship and Society | Correctional Officers |
| 10 | Lost Chance of Recovery & Survival under Mo. Rev. Stat. § 537.020 | Supervisor Defendants and Correctional Officers |
| 11 | Wrongful Death under Mo. Rev. Stat. § 537.080 | Supervisor Defendants and Correctional Officers |
| 12 | Sunshine Law Violation | MDOC, Matt Briesacher, Brock Van Loo |

## III. Summary Judgment Standard

Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A

3

genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All evidence must be viewed in the light most favorable to the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007). Summary judgment is inappropriate where reasonable minds could differ as to the importance of the evidence, *Anderson*, 477 U.S. at 250-51, and where the parties present competing expert testimony on critical issues of standard of care and causation. *See Moore v. Duffy,* 255 F.3d 543, 545 (8th Cir. 2001).

## IV. Genuine Issues of Material Fact Preclude Summary Judgment on Plaintiff's Breach of Contract Claim (Count 1).

### A. MDOC has previously admitted that a State waives sovereign immunity when it enters a valid contract.

"[W]hen the State enters into a validly authorized contract, it lays aside whatever privilege of sovereign immunity it otherwise possesses and binds itself to performance, just as any private citizen would do by so contracting." *V.S. DiCarlo Constr. Co. v. State*, 485 S.W.2d 52, 55 (Mo. Banc 1972). *See Mo. Corr. Officers Ass'n v. Mo. Dep't of Corr.*, No. 10-4168-CV-NKL, 2011 U.S. Dist. LEXIS 54731, at *19 (W.D. Mo. May 23, 2011) (MDOC "concede[s] that it is well settled in Missouri that 'when the State enters into a validly authorized contract, it lays aside whatever privilege of sovereign immunity it otherwise possesses...'"). Because Defendants admit there is a valid contract, sovereign immunity does not bar Plaintiff's breach of contract claim against MDOC.[2]

### B. Questions of fact exist as to whether Brandon is a third-party beneficiary of the Centurion-MDOC Medical Services Contract.

MDOC argues that Plaintiff cannot establish a claim for breach of contract with Brandon as a third-party beneficiary because the contract between MDOC and Centurion contains a disclaimer and because the duty at issue "stems from common law and constitutional duties, not contractual duties." This argument fails where (1) MDOC has not produced a complete, executed contract containing the limiting language; and (2) MDOC admits that inmates are the intended

---

[2] MDOC's argument that Counts 6, 7, and 9 are barred by sovereign immunity is moot, because Plaintiff previously agreed to dismiss Counts 6, 7, and 9 against MDOC. ECF 233.

beneficiaries of the medical services contract.

MDOC's argument that the contract's language disclaiming intent to create any rights in third parties has a threshold problem: MDOC has never produced a complete, executed version of the contract containing this language. On November 14, 2025, this Court addressed this very issue, denying Centurion's motion to dismiss Count 1, stating: "Centurion does not point to, and the Court does not otherwise find, a basis for the conclusion that the language of proposed Paragraph 5.8 was part of the contract executed between MDOC and Centurion for the provision of medical services." ECF 171 at 6. MDOC now repeats the same argument with the same flaw, pointing to a publicly available website containing 76 individual documents — some with hundreds of pages — but has never produced or authenticated the executed contract between MDOC and Centurion. The cited language appears in what may be a request for proposal, not an executed agreement. Without an authenticated, executed contract containing the limitation, MDOC cannot meet its burden to show that no genuine dispute of material fact exists.

MDOC's argument also fails on the merits. Under Missouri law, "[a] third party beneficiary is one who is not privy to a contract or its consideration but who may nonetheless maintain a cause of action for breach of the contract." *L.A.C. v. Ward Parkway Shopping Ctr. Co., L.P.*, 75 S.W.3d 247, 260 (Mo. 2002) (quotation omitted). "To be bound as a third-party beneficiary, the terms of the contract must clearly express intent to benefit that party or an identifiable class of which the party is a member." *Hoops v. Medical Reimbursements of Am., Inc.*, No. 4:16-cv-01543-AGF, 2018 U.S. Dist. LEXIS 34257, at *23-24 (E.D. Mo. Mar. 2, 2018) (quotation omitted). Here, MDOC has admitted that the purpose of its agreement with Centurion is "to provide medical, dental, and behavioral health care for inmates in the custody of MODOC." SOF ¶¶ 67- 68. So has Centurion. SOF ¶ 68. These admissions establish that inmates, the identifiable class to whom medical services are provided, are the intended beneficiaries of the contract.

Inmates are also creditor beneficiaries under Missouri law because MDOC has a constitutional duty to provide inmates with adequate medical care, *see Estelle v. Gamble*, 429

U.S. 97, 103 (1976), and the performance of Centurion's contractual obligations satisfies that duty for MDOC. "A person is a creditor beneficiary if the performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary." *L.A.C.*, 75 S.W.3d at 260-61 (quotation omitted) (finding that a mall customer was a creditor beneficiary of the mall's security contract where the contract repeatedly referenced protecting mall customers). The medical services contract is no different: Centurion provides medical care to inmates in exchange for consideration from MDOC, and the entire purpose of the arrangement is to discharge MDOC's duty to provide inmates with care. *See Cherry v. Crow*, 845 F. Supp. 1520, 1523 (M.D. Fla. 1994) (denying motion to dismiss where the entirety of the Health Services Agreement between the medical provider and sheriff showed that the parties intended to benefit inmates); *Stevens v. Goord*, 535 F. Supp. 2d 373, 391 (S.D.N.Y. 2008) ("The clear implication of the contract language is that prisoners in DOCS facilities are intended beneficiaries of the contract, as the medical services at issue in the contract are for their benefit").[3] Accordingly, the motion should be denied.

### C. Fed. R. Civ. P. 8(d)(2) permits Plaintiff to argue alternative claims to the jury.

Federal Rule of Civil Procedure 8(d)(2) provides that "a plaintiff may plead inconsistent theories of liability, and may even argue alternative claims to a jury." *McNamara v. Picken*, 950 F. Supp. 2d 125, 128 (D.D.C. 2013) (citation omitted). Typically, courts will determine at summary judgment whether a breach of contract or quasi-contractual claim for unjust enrichment may proceed. That is not this case. In this case, Plaintiff has independent bases for recovery: MDOC's breach of an agreement to provide medical services to inmates, and separate claims against individual defendants for violations of constitutional rights.

---

[3] MDOC's reliance on *Moore v. Corizon, LLC*, No. 4:15-CV-597 RLW, 2015 U.S. Dist. LEXIS 135328 (E.D. Mo. Oct. 5, 2015), and *Zygler v. Hawkins Constr.*, 609 S.W.3d 61, 70 (Mo. Ct. App. 2020), is misplaced. In *Moore*, the court received an authenticated, publicly available contract containing the disclaimer language. And *Zygler* involved a construction contract, not a medical services contract where the entire purpose is to inmates who have no other means of obtaining care.

MDOC argues that Plaintiff is attempting to shoehorn a tort claim into a breach of contract claim, citing *Wages v. Young*, 261 S.W.3d 711, 715 (Mo. App. W.D. 2008). However, in *Wages,* the plaintiff was attempting to recast a contract claim as a fraud claim to evade a statute of limitations bar. No such statute of limitations gamesmanship exists here. Accordingly, summary judgment on Count 1 should be denied.

**V.      Official Immunity Does Not Bar Plaintiff's Claims Claim for Negligent Retention of a Private Contractor (Count 2) and Wrongful Death (Count 11).**

Official immunity protects public officials from liability for injuries arising out of their discretionary acts or omissions, but there is no immunity for ministerial acts. *Brandy v. City of St. Louis*, 75 F.4th 908, 917 (8th Cir. 2023). Official immunity also does not apply to "discretionary acts done in bad faith or with malice." *Id.* (quoting *Reasonover v. St. Louis Cnty.*, 447 F.3d 569, 585 (8th Cir. 2006)). "The relevant definition of bad faith or malice in this context ordinarily contains a requirement of actual intent to cause injury." *State ex rel. Love v. Cunningham ex rel. Ludwick*, 689 S.W.3d 489, 496-497 (Mo. 2024) (citation omitted). "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *Id.* (quoting *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 190 n.7 (Mo. banc 2019)).

**A.  The Supervisor Defendants are not entitled to official immunity on Count 2 (Negligent Retention of Centurion) or Count 11 (wrongful death) because they acted with malice or bad faith.**

The Supervisor Defendants are not entitled to official immunity for the negligent retention of Centurion (Count 2) and wrongful death (Count 11) based on malice or bad faith. As discussed below, a reasonable jury could find that malice or bad faith existed where the Supervisor Defendants retained Centurion despite (i) Centurion's known failure to provide adequate medical care to inmates that resulted in serious injury and death, and (ii) MDOC's failure to train Centurion medical personnel on MDOC policies to fix the problem of inadequate medical care. Further, the Supervisor Defendants allowed a practice of overworked, untrained,

and inexperienced personnel to punish inmates and withhold medical care. Such evidence, if believed by the jury, shows the Supervisor Defendants evinced an actual intent to cause injury.

### 1. The Supervisor Defendants acted with malice in the continued retention of Centurion (Count 2).

"Under Missouri law, a Plaintiff states a prima facie case of negligent hiring [or retention] by pleading that '(1) the employer knew or should have known of the employee's dangerous proclivities, and (2) the employer's negligence was the proximate cause of the plaintiff's injuries.'" *Hejnal v. U.S. Xpress, Inc.*, No. 4:17-CV-2557 CAS, 2018 U.S. Dist. LEXIS 11304, at *9 (E.D. Mo. Jan. 24, 2018) (quoting *Lambert v. New Horizons Cmty. Support Servs.*, No. 2:15-cv-04291-NKL, 2016 U.S. Dist. LEXIS 51300, at *4 (W.D. Mo. 2016 Apr. 18, 2016)). "An employer's knowledge of the employee's dangerous proclivities is based upon prior acts of misconduct." *Id.* (citations omitted).

Here, a reasonable jury could find that the Supervisor Defendants acted with malice, where they retained Centurion as the medical provider despite known and obvious failure to provide adequate medical care. The Supervisor Defendants had knowledge of (and MDOC kept a list of) numerous lawsuits against Centurion at MDOC facilities involving similar issues, including inadequate medical care and failure to respond to emergencies. SOF ¶¶ 533-538. These include the factually analogous *Scott v. Precythe* case, in which an inmate died under strikingly similar circumstances at another MDOC facility after being pepper sprayed, placed in a spit mask, and confined in administrative segregation, as well as *Brown v. Hampton*, *Shattuck v. Lewis*, *Street v. Hinman*, and *Vasser v. Missouri Dep't of Corrections*. SOF ¶¶ 533-538.

Despite the known inadequate medical care, the Supervisor Defendants took no steps to ensure that Centurion personnel were properly trained in MDOC policies. MDOC's corporate representative, Matt Briesacher, admitted that MDOC was responsible for ensuring that Centurion complied with MDOC policies. SOF ¶¶ 73, 77. Yet, the evidence shows that none of the Centurion nurses received adequate, or in some cases *any*, training on critical MDOC protocols. SOF ¶¶ 78, 156-158. Retaining Centurion after known problems and without any plan

8

or changes in place to ensure that Centurion personnel were trained to provide adequate medical care in accord with MDOC policies shows the Supervisor Defendants' malice.

In the factually analogous *Scott v. Precythe*, the court dismissed the negligent retention claim without prejudice solely because the plaintiff failed to allege that MDOC leadership knew about Centurion's dangerous proclivities. *See Scott v. Precythe*, No. 2:24-cv-04107 (W.D. Mo.), ECF 105 at 11–12. That deficiency is not present here. The evidence shows that the Supervisor Defendants knew about Centurion's dangerous proclivities through prior lawsuits and MDOC's and Centurion's systemic failures in vetting, training, and supervising its personnel. A jury could find that the Supervisor Defendants acted with malice to the rights of inmates which was likely to cause injury through the continued retention of Centurion.

### 2. The Supervisor Defendants are not entitled to official immunity for Wrongful Death (Count 11).

The Supervisor Defendants are not shielded by official immunity on Plaintiff's wrongful death claim because the record supports a finding that they acted with malice and bad faith in maintaining and permitting systemic practices that predictably deprived inmates, including Brandon, of necessary medical care. The evidence demonstrates that they knowingly permitted and perpetuated a dangerous and unconstitutional system in which overworked, inadequately trained, and inexperienced correctional staff were allowed to punish inmates and withhold access to medical care, while simultaneously allowing medical personnel to operate without the training necessary to respond to obvious medical emergencies. *See generally* SOF.

First, the evidence shows that Tipton was chronically understaffed, with mandatory overtime imposed on correctional officers. SOF ¶¶ 162-166, 169-172. This created conditions in which fatigued and inexperienced staff were responsible for critical medical and custodial decisions affecting vulnerable inmates. SOF ¶¶ 178-179. The predictable consequence of such a system is not merely inefficiency, it is the deprivation of basic care and safety. A reasonable jury could find that the Supervisor Defendants were aware that these staffing conditions created a substantial risk of serious harm to inmates yet failed to take corrective action.

9

Second, the record establishes pervasive failures in training, both for correctional staff and for medical personnel. Correctional officers lacked adequate training on core MDOC policies, including recognizing drug impairment, responding to overdoses, properly using chemical agents, and ensuring access to medical care. SOF ¶¶ 140-155. At the same time, for medical staff, there was no formal training structure, no certified trainers, and reliance on ad hoc instruction. SOF ¶¶ 77-78,156-158. These are not minor deficiencies; they go directly to staff ability to identify and respond to life-threatening conditions like drug ingestion and respiratory distress.

Critically, the Supervisor Defendants were responsible for promulgating policies, ensuring compliance, and overseeing both custody and medical operations. SOF ¶¶ 2-4, 6-7, 28. The evidence shows they knew that MDOC policies governed medical care and that Centurion staff were required to follow those policies. SOF ¶¶ 72-76. Yet despite that responsibility, they allowed a system to persist in which neither custody staff nor medical providers were properly trained to carry out those policies.

Third, the Supervisor Defendants permitted a culture and practice in which correctional staff, rather than facilitating medical care, effectively controlled whether and when inmates received treatment and could instead resort to punitive measures. SOF ¶¶ 139-158. The events of April 7, 2023 are consistent with that systemic failure: Brandon, known to have ingested drugs, was subjected to force, placed in a dry cell, and then left without meaningful medical monitoring for hours despite obvious signs of distress. SOF ¶¶ 191-443. These actions were the foreseeable product of a system in which untrained officers were left to make medical judgments as opposed to seeking mandatory help for inmates as required by written policy.

Fourth, the Supervisor Defendants' failure to ensure that medical staff were trained to handle inmate emergencies is independently sufficient to establish malice. The governing protocols required prompt medical evaluation, monitoring, and intervention in cases of suspected overdose or impairment. SOF ¶¶ 80-102. Yet the evidence shows that medical personnel lacked the training to implement these protocols and, in practice, deferred to custody staff. SOF ¶¶ 74-

10

78. This abdication of medical responsibility, known to and uncorrected by the Supervisor Defendants, created an environment in which inmates were left untreated during medical crises. A reasonable jury could find such conduct reflects a conscious disregard for inmate safety, knowing the likelihood of injury or death, sufficient to establish malice and defeat official immunity.

### B. The Correctional Officers are not entitled official immunity for Wrongful Death (Count 11).

#### 1. The Correctional Officers were required to perform multiple ministerial duties, and thus are not entitled to official immunity.

"A duty is considered ministerial when the act is to be performed upon a given state of facts in a prescribed manner in obedience to the mandate of legal authority, and without regard to the public official's judgment or opinion concerning the propriety or impropriety of the act to be performed." *State ex rel. Love v. Cunningham ex rel. Ludwick*, 689 S.W.3d 489, 495-496 (Mo. 2024) (quotation omitted). "The central inquiry is not whether the law confers a duty to act but, instead, whether the public official retains any discretion in completing an act." *Id.* (quotation omitted) (emphasis omitted). Official immunity does not apply to the failure to perform a ministerial duty. *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. 2008). Under MDOC policies, the Correctional Officers had the following ministerial duties during the events of April 7, 2023:

**Mandatory requirement to contact medical after drug ingestion.** The Dry Cell Procedures and Overdose/Ingestion protocol mandate that staff immediately contact the shift supervisor and medical upon learning of drug ingestion by an inmate or where the inmate is in distress. SOF ¶¶ 80-84. *See also* SOF ¶¶ 110-114 (Access to Care policy). There is no question that the Correctional Officers knew that Brandon ingested drugs. SOF ¶¶ 195, 198-199, 219, 224, 231, 235, 242, 245-248. Thus, they had a mandatory obligation to seek medical care for Brandon, but did not. Because the requirement to contact medical after an inmate ingests drugs was ministerial, the Correctional Officers are not entitled to official immunity for Plaintiff's

11

wrongful death claim.

**Mandatory constant observation of inmate.** The Dry Cell Procedures mandated constant observation of Brandon. SOF ¶¶ 92-93. Because these procedures left Defendants with no discretion as to the level of observation, the assignment to constantly observe Brandon was ministerial. *See, e.g., Lundy v. Hancock Cnty.*, 890 S.E.2d 92, 99 (Ga. Ct. App. 2023) (ministerial function includes policy "Constant Observation . . . on a continuous, uninterrupted basis."); *Headley v. Ceturion of Mo. LLC*, No. 2:23-CV-52 HEA, 2025 U.S. Dist. LEXIS 62184, at *33-34 (E.D. Mo. Mar. 31, 2025) (timed cell checks have been held to be ministerial). On his first-ever dry cell assignment, with no training on dry cell observation, Officer Barker left his observation post multiple times and admitted he did not know what he was doing. SOF ¶¶ 356-357, 369-374, 415. Moreover, Sergeant Samuel failed to check on Brandon or Officer Barker for approximately three and a half hours. SOF ¶¶ 392-394. Because the requirement for constant observation was ministerial, Defendants are not entitled to official immunity.

**Mandatory restraint checks.** Policy requires examination of an inmate's restraints every two hours. SOF ¶¶ 91, 128, 141, 354, 400. "Timed cell checks have been held to be ministerial where the policy 'required performance of checks upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to [the guard's] own judgment or opinion concerning the propriety of the act to be performed.'" *Id.* (quoting *A.H. v. St. Louis Cnty., Missouri*, 891 F.3d 721, 729 (8th Cir. 2018) (finding cell checks were ministerial duty, but that defendant was entitled to official immunity because there was evidence that she had performed the checks)). The Correctional Officers ignored the lack of restraint checks from 5:55 p.m. until 9:31 p.m. (a gap of three hours and thirty-six minutes), violating the two-hour check requirement. SOF ¶ 389. Because the requirement for timed restraint checks was ministerial, Defendants are not entitled to official immunity.

**Mandatory pre-deployment medical clearance before use of force.** The Use of Force Guidelines require pre-deployment medical clearance. SOF ¶¶ 103, 107, 239. The only discretion afforded is when the inmate is a danger to others, which was not the case here given that

12

Brandon was locked in a dry cell. But clearance was not obtained. SOF ¶¶ 240-241. Because the requirement for pre-deployment medical clearance was required and thus ministerial, Defendants are not entitled to official immunity.

**Mandatory use of soft-empty-hand techniques before pepper spray.** The Use of Force Guidelines require that soft empty-hand techniques be utilized before pepper spray. Ex. 28 Adee Rep. 33; SOF ¶ 105. There is no discretion when the inmate is locked in a cell and not a danger to other inmates, like Brandon was here. Defendants are not entitled to official immunity.

**Mandatory change in cell.** MDOC's Guidelines for Phantom/Vapor OC mandate that an inmate not be left in a cell after OC spray is deployed. SOF ¶ 64. *See also* Ex. 28 Adee Rep. 30. Yet, the Correctional Officers left Brandon in a contaminated cell. SOF ¶¶ 268-303. Because this requirement was ministerial, Defendants are not entitled to official immunity.

**Mandatory decontamination.** The Use of Force Guidelines and Reports (SOP/IS 20-3.1) requires that, when a chemical agent or pepper spray is used, the inmate must be given access to water to flush his face, eyes, and other exposed skin areas as soon as possible. SOF ¶ 109; *Hall v. Acker*, 367 Ga. App. 411, 414–17, 885 S.E.2d 266 (2023) (holding that a school system policy which provided that, following the use of pepper spray on a "subject," "officers will flush the eyes and face of the affected subject with clean water as soon as possible after the subject is secured" created a ministerial duty because it gave no discretion as to whether to flush the subject's eyes (alteration omitted)). Brandon received only 58 seconds of saline irrigation to his eyes more than 35 minutes after the spray was deployed and was denied access to a shower despite his repeated requests. SOF ¶¶ 336, 339, 343.

Each of these failures constitutes a breach of a specific, mandatory protocol (not a discretionary judgment call), and each creates an independent basis for denying official immunity. *See Headley*, 2025 U.S. Dist. LEXIS 62184, at *33; *Harmon v. Preferred Fam. Healthcare, Inc.*, 125 F.4th 874, 886 (8th Cir. 2025) (to allege exception to official immunity, plaintiff must plead "(1) the existence of a statutory or departmentally mandated duty, and (2) a breach of that duty"). Accordingly, the motion for summary judgment as to Count 11 for the

13

Correctional Officers should be denied.

### 2. The Correctional Officers are not entitled to official immunity because they acted with malice.

The Correctional Officers are also not entitled to official immunity because they performed their duties, even if discretionary, with malice or bad faith. *Laughlin v. Perry*, 604 S.W.3d 621, 625 (Mo. 2020). To show malice, there must be evidence of "actual intent to cause injury." *State ex rel. Love*, 689 S.W.3d at 498. Bad faith is satisfied where an official acts with "a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Twiehaus v. Adolf*, 706 S.W.2d 443, 447 (Mo. 1986) (citing *Catalina v. Crawford*, 483 N.E.2d 486, 490 (1984)). The Correctional Officers' attempt to characterize this case as one of mere negligence is flatly contradicted by the evidentiary record. The evidence shows a course of conduct so egregious that no reasonable person could call it anything less than deliberate:

**Lieutenant Witt intentionally hurt Brandon with Riot Pepper Spray, even though Brandon was not a threat to others.** Lieutenant Witt twice deployed a riot-sized MK-9 Phantom "Cell Buster" OC canister — a crowd control device intended for open-air use to break up fights, not for use on individuals or in confined spaces — on Brandon at point-blank range while he was confined in a dry cell despite knowing Brandon had ingested methamphetamine. SOF ¶¶ 46–47, 50, 53–54, 107, 257–259, 471. Prior to using Riot Pepper Spray, the Correctional Officers served dinner to the other inmates in the Segregation Unit and left Brandon alone, showing he was not a danger. SOF ¶ 263. Then, Lieutenant Witt deliberately turned off the handheld camera and other Correctional Officers covered up the windows of other cells so that there would be no witnesses to his actions. SOF ¶¶ 262, 265.

**The Correctional Officers intentionally left Brandon to die without physical or medical interventions.** After Lieutenant Witt sprayed Brandon with Riot Pepper Spray, the Correctional Officers denied Brandon a shower despite his repeated pleas, left him in a contaminated cell, did not call for medical until 35 minutes later (and then only permitted his

14

eyes to be briefly irrigated). SOF ¶¶ 268-272, 286-303, 325-342. They ignored Brandon for over four hours while he screamed for help, said he could not breathe, and moaned in pain. SOF ¶¶ 351, 362-368, 375-376, 379-380, 384-385, 392-394, 402. Brandon engaged in self-harming behavior, running his head into the door, scraping his head until it bled, punching the wall, while hallucinating and talking gibberish, any one of which required the Correctional Officers to seek medical help. SOF ¶¶ 363, 367, 379, 384-385. Yet they didn't. From 5:55 p.m. to 9:31 p.m., no medical professional opened Brandon's cell door or conducted any assessment, despite MDOC policy requiring checks every two hours. SOF ¶¶ 392-395.[4] And they watched as Brandon lay face down with his restraints pulled up to his chest, putting him at risk for positional asphyxiation, without rolling him over or sitting him up. SOF ¶¶ 402-403, 406, 410, 496.

This is not a close case. A reasonable jury would have no difficulty concluding that the Correctional Officers' conduct, i.e. spraying a confined, drug-impaired inmate with riot-grade OC spray, refusing to decontaminate him, and then ignoring his pleas for help for hours while he deteriorated and died alone on the floor of a cell, reflects an actual intent to cause injury. *See Taylor v. St. Louis Cnty.*, No. 4:24-cv-00034-AGF, 2024 U.S. Dist. LEXIS 123942, at *23–24 (E.D. Mo. July 15, 2024) (allegations that officers were present when inmate called for help "to no avail" were "sufficient to overcome Defendants' claim of official immunity"); *Payton v. City of St. Louis*, No. 4:20-cv-00861-SEP, 2021 U.S. Dist. LEXIS 63446, at *15 (E.D. Mo. Mar. 31, 2021) (finding a correctional officers' alleged failure to promptly respond to a decedent's medical emergency could amount to bad faith or malice and was a factual question for the jury); *Brandy*, 75 F.4th at 917 (agreeing that a jury could find an officer acted with malice if he deployed pepper spray for retaliation purposes). Because genuine issues of material fact exist as to both the ministerial exception and malice, and because the record evidence creates genuine issues of material fact, the Correctional Officers are not entitled to official immunity.

---

[4] Sgt. Samuel failed to check on Brandon for approximately four hours despite a documented history of abandoning dry cell posts; he was previously demoted for leaving his post for 30 minutes while an offender was on dry cell status. SOF ¶¶ 394, 452-453.

15

**VI. Genuine Issues of Material Fact Preclude Summary Judgment for Plaintiff's § 1983 Excessive Force Claim (Count 3).**

        **A. Plaintiff's constitutional claim for Excessive Force did not abate upon Brandon's death.**

Defendants argue that Count 3 abated upon Brandon's death because, under 42 U.S.C. § 1988, courts look to Missouri survivorship rules, which provide that assault and battery claims abate upon death. ECF 282 at 11 (citing *Childs v. Brummett*, No. 4:20-00814-CV-RK, 2021 WL 5702432, at *7, 2021 U.S. Dist. LEXIS 229710 (W.D. Mo. Dec. 1, 2021)).[5] But Plaintiff's claim did not abate because the excessive force contributed to Brandon's death.

First, the court in *Childs v. Brummett* found that the plaintiff's claim for excessive force abated upon his death where "(1) the claim is excessive force, *and* (2) Plaintiff's death was *unrelated* to the excessive force…." 2021 U.S. Dist. LEXIS 229710, at *8 (emphasis added). Holding that abatement only occurs where the excessive force is unrelated to the decedent's death comports with the policies underlying Section 1983. *See Estate of Gilliam v. City of Prattville*, 639 F.3d 1041, 1048 (11th Cir. 2011) ("…Gilliam's estate could not assert a § 1983 claim through the wrongful death statute, Ala. Code. § 6-5-410, because it could not produce admissible evidence that the use of force *caused* Gilliam's death.") (emphasis added).

Here, on the other hand, the evidence shows that Brandon's death *was* related to the use of excessive force. SOF ¶¶ 518-522, 530-531. State law may not define what constitutional claims abate if those laws are "inconsistent with the Constitution and laws of the United States." *Robertson v. Wegmann*, 436 U.S. 584, 588 (1978). Applying Missouri's abatement law for assault and battery to extinguish a federal excessive force claim resulting in death would be fundamentally inconsistent with Section 1983's remedial purpose. *Foster v. Armontrout*, 729 F.2d 583, 585 (8th Cir. 1984) ("Congress intended section 1983 to supplement any available state remedy with a broad statutory remedy for alleged deprivations of federal constitutional rights under color of state authority.") (citation omitted).

Second, R.S. Mo. § 537.030, which identifies actions excluded from § 537.020's general

---

[5] Plaintiff concedes that Count 9 (state law assault and battery) should be dismissed.

survival rule, does not list § 1983 claims. The Missouri Court of Appeals has recognized that if an exclusion is not specifically enumerated in § 537.030, that statute cannot bar such claims after death. *See Erby v. St. Louis Cnty.*, 708 S.W.3d 175, 181 (Mo. Ct. App. 2025). Defendants' reliance on *Childs v. Brummett* is thus misplaced. *Childs*'s analysis was brief and did not address the statutory construction argument under *Erby* or the inconsistency argument under *Robertson*. To the extent *Childs* holds otherwise, it is inconsistent with *Robertson*'s requirement that state abatement rules yield when they conflict with federal policy. The federal policy interest is particularly strong here. Brandon was subjected to riot-grade OC spray in a dry cell, denied decontamination, and abandoned for nearly four hours until he died. If the constitutional claim for excessive force abated simply because the victim died, it would incentivize those using excessive force under color of law to ensure the victim does not survive. That is precisely what § 1983 was designed to prevent. The motion should be denied.

### B. A reasonable jury could find all Correctional Officers liable for excessive force.

The Eighth Amendment prohibits conditions of confinement that involve the unnecessary and wanton infliction of pain. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Supreme Court has explained that "among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'" *Id.* (citation omitted). "In making this determination in the context of prison conditions, [courts] must ascertain whether the officials involved acted with 'deliberate indifference' to the inmates' health or safety." *Hope v. Pelzer*, 536 U.S. 730, 737-738 (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). Courts "may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).

The Correctional Officers argue that, because Defendant Witt deployed the OC spray, the remaining Defendants had no "personal involvement," warranting summary judgment. Their attempt to reduce this case to an isolated period of OC spray deployment should be rejected. The Eighth Amendment requires examining the *entire sequence of events*, including conditions of

17

confinement, denial of medical care, and failure to follow mandatory protocols. *Id. See Burns v. Eaton*, 752 F.3d 1136, 1140-41 (8th Cir. 2014) (force may be excessive where pepper spray is used in super-soaker quantities, used in combination with additional physical force, or the victim is unable to wash off the painful chemical for days); *Walker v. Bowersox*, 526 F.3d 1186, 1189 (8th Cir. 2008) (finding trial worthy issues where, in an attempt to force plaintiff to accept a specific cellmate, plaintiff was restrained on a bench for 24 hours, had no access to food, water, medications, or a bathroom, was forced to sit in an upright position, and suffered exacerbations of his chronic back pain and post-traumatic stress disorder); *Treats v. Morgan*, 308 F.3d 868, 873 (8th Cir. 2002) (finding genuine issues for trial where plaintiff refused to take a copy of a form and attempted to speak to two officers, and was sprayed in the face, slammed to the floor, and handcuffed); *Lawrence v. Bowersox*, 297 F.3d 727, 730, 732 (8th Cir. 2002) (finding the use of riot-sized pepper spray in a confined cell was excessive use of force regardless of words used by plaintiff); *Williams v. Benjamin*, 77 F.3d 756, 765 (4th Cir. 1996) (reversing summary judgment where guards sprayed plaintiff with mace and confined him for eight hours without permitting him to wash or receive medical attention).

The evidence here establishes a prolonged course of conduct that a reasonable jury could find constituted excessive force. SOF ¶¶ 191-323, 533-538. Each Correctional Officer Defendant played a personal role; by way of example only: Witt deployed Riot Pepper Spray twice at point-blank range in more than short bursts, *id.* ¶¶ 269-270; Kimbell physically restrained Brandon while he was covered in OC spray and did not call medical, *id.* ¶¶ 313, 321; Smith recorded the use of force and did not call medical, *id.* ¶ 266; Payne authorized the dry cell procedure and use of force, knew of the ingestion, and did not call medical, *id.* ¶¶ 245, 250-251, 254; Samuel assigned an untrained and inexperienced officer to mandatory observation of Brandon and abandoned his post by failing to check on either for three and a half hours and prevented Barker from immediately providing CPR upon discovering Brandon without a pulse, *id.* ¶¶ 355, 358, 394, 429; Ward was assigned to the control center with 30-minute check obligations but did not call medical, *id.* ¶ 398; Van Loo, as the Warden responsible for Tipton operations, including

18

ensuring that policies governing use of force, medical access, and staffing were followed, permitted the systemic failures in training, staffing, and supervision that resulted in Brandon being denied medical care, and allowed his name to be used in the cover-up with falsified documents, *id.* ¶¶ 29, 241; Webb, as a supervising sergeant, participated in and/or oversaw the events in the segregation unit and failed to ensure that required medical care was obtained despite clear signs of medical distress, *id.* ¶¶ 197-200, 206-209; Montes, as a member of staff trained in crisis intervention, failed to de-escalate the situation or ensure that Brandon received medical attention despite the availability of non-force alternatives, *id.* ¶¶ 222, 233, 244; May, as a lieutenant and supervisory official on scene, had authority to intervene, stop the use of force, and ensure compliance with medical policies but failed to do so, *id.* ¶¶ 25, 266; Endsley was assigned to the segregation unit and had direct responsibility for monitoring Brandon but failed to obtain medical care or initiate a medical emergency response despite observable signs of impairment, *id.* ¶¶ 43, 134; and Barker was assigned to maintain observation of Brandon but failed to conduct the required monitoring and did not timely summon medical assistance during the extended period in which Brandon was left alone without checks, *id.* ¶¶ 355-386. Plaintiff has identified a detailed series of events by specific persons over the course of hours. The motion should be denied.

### C. Defendant Witt's deployment of Riot Pepper Spray twice while Brandon was in a confined space and not a threat to anyone's safety was not a "tempered response."

"Not every instance of inmate resistance justifies the use of force, *Hickey*, 12 F.3d at 759, and use of pepper spray will not be justified every time an inmate questions orders or seeks redress for an officer's actions." *Treats*, 308 F.3d at 872-873 (citing *Foulk v. Charrier*, 262 F.3d 687, 702). "The test is whether the officer's use of force was reasonable under the circumstances, or whether it was punitive, arbitrary, or malicious." *Treats*, 308 F.3d at 872-873 (citation omitted). "A basis for an Eighth Amendment claim exists when, as alleged here, an officer uses pepper spray without warning on an inmate who may have questioned his actions but who otherwise poses no threat." *Id.* (citing *Foulk*, 262 F.3d at 691-92, 702; *Lawrence*, 297 F.3d at

19

730, 732 (correctional officer violated Eighth Amendment by ordering use of pepper spray on inmates who had questioned his command during a post riot search)).

Defendant Witt's argument that his use of pepper spray was a "tempered response" under *Jones v. Shields*, 207 F.3d 491 (8th Cir. 2000), fails. *Jones* involved duty-sized OC spray (not the Riot Pepper Spray used by Witt) on a large inmate who refused a work order. 207 F.3d at 496-497. Unlike Brandon, the *Jones* plaintiff was not drug-impaired, not subsequently denied decontamination, and not abandoned in a contaminated cell for hours. In fact, during discovery, Witt's fellow correctional officers criticized Witt's use of Riot Pepper Spray in the place and manner he used it, including the excessive amount he used. SOF ¶¶ 273, 275. Under these circumstances, summary judgment would be against the weight of the evidence:

- ***The weapon***. Witt used a riot-sized MK-9 Phantom "Cell Buster," a crowd control device for open-air use, to spray Brandon twice. SOF ¶¶ 268-271.

- ***Drug impairment***. Witt knew Brandon had ingested methamphetamine. SOF ¶ 254. The manufacturer's warnings state that OC use on an impaired individual poses serious risk of death. SOF ¶ 482.

- ***Absence of necessity***. The contraband had already been ingested; there was nothing to recover. Expert Adee opined the force was "not necessary or justified, as Pace was merely non-compliant with orders for a 2nd strip search. He had not displayed any type of physical aggression or made threats toward staff." Ex. 28 Adee Rep. 33. Witt violated TCC's own Use of Force Guidelines requiring "soft empty-hand techniques" before pepper spray. SOF ¶ 516.

- ***Prolonged denial of decontamination and medical care***. For over 35 minutes after the spray, officers attempted to dress Brandon in a jumpsuit and apply restraints while he screamed and said "I can't breathe." SOF ¶¶ 290, 293-301, 309-312. Nurses provided only 58 seconds of saline irrigation and took no vitals. SOF ¶ 342. Brandon was then placed in a cell sharing airspace with the contaminated cell and abandoned for nearly four hours. SOF ¶¶ 351-352.

This was not "a limited application of capstun to control a recalcitrant inmate." *Jones*, 207 F.3d at 496. It was a multiple shot application of riot-grade chemical agent on a drug-impaired inmate in a confined cell, followed by hours of deliberate indifference resulting in death. The *Treats* factors all weigh against Defendants: (1) the objective need for force had diminished because Brandon had already ingested the drugs (Ex. 28 Adee Rep. 33); (2) the force was grossly disproportionate (riot-grade chemical agent deployed twice in a 6.7-foot cell); (3)

20

Brandon posed no physical threat (Ex. 28 Adee Rep. 33); (4) officers skipped soft empty-hand techniques entirely; and (5) Brandon died. A reasonable jury could find this conduct "malicious and sadistic." *Hudson*, 503 U.S. at 6-7. Summary judgment should be denied.

### D. Defendants are not entitled to qualified immunity from the excessive force claim.

Qualified immunity shields a government official from liability unless his conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citation omitted). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). First, this Court must decide whether the facts "make out a violation of a constitutional right". *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). As set forth above, Plaintiff has done that here. *See* Sections VI(B),(C), *supra.* "Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly 'established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232.

The right not to be subjected to excessive force has been clearly established since *Hudson v. McMillian*. More specifically, the Eighth Circuit has established that deploying OC spray in super-soaker quantities, combined with additional physical force, and denying the victim the ability to wash off the chemical can constitute excessive force. *Burns*, 752 F.3d at 1140-41; *see also Treats*, 308 F.3d at 875. A reasonable officer in April 2023 would have known that spraying a drug-impaired inmate with riot-grade chemical agent in a confined cell, denying decontamination, and abandoning him for hours violated the Eighth Amendment. Qualified immunity on Count 3 should be denied.

### VII. Genuine issues of material fact preclude summary judgment on Plaintiff's Section 1983 claims (Counts 6, 7, and 8) against the Supervisor Defendants and Correctional Officers in their individual capacities.

Under 42 U.S.C. § 1983 and against the Supervisor Defendants and certain Correctional Officers in their individual capacities, Plaintiff brings Count 6 for Unconstitutional Policies, Customs, and Practices, Count 7 for the failure to train or supervise MDOC employees, and

21

Count 8 for Loss of Companionship. *See also* Motion for Leave to Amend. *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014)[6].

### A. The Supervisor Defendants are liable under § 1983 for their personal involvement.

A supervisor may be liable under § 1983 if either his direct action or his "failure to properly supervise and train the offending employee" caused the constitutional violation at issue. *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001) (quotation omitted); *Crooks v. Nix*, 872 F.2d 800, 804 (8th Cir. 1989). "Even if a supervisor is not involved in day-to-day operations, his personal involvement may be found if he is involved in 'creating, applying, or interpreting a policy' that gives rise to unconstitutional conditions." *Jackson*, 747 F.3d at 543 (citation omitted). The trier of fact will assess each defendant relative to his authority over the claimed constitutional violation. Here, the evidence establishes that each of the Supervisor Defendants had authority over the claimed constitutional violation, which contributed to Brandon's death:

***Director Precythe.*** As the Director of the Department of Corrections, Precythe had the following responsibilities:

> 3. The director shall establish the duties and responsibilities of employees of the department, shall supervise their work assignments and may require reports from any employee as to his conduct and management relating to the correctional centers and programs of the department. The director shall also be responsible for the implementation of uniform policies and procedures governing offenders and staff.
>
> 4. The director shall have control and jurisdiction over all persons who are legally sentenced, assigned and committed to the custody and supervision of the department.

R.S. Mo. § 217.025(3); SOF ¶¶ 2-5. Precythe failed to uphold her duties in multiple ways, including (i) the failure to implement any training on critical policies or the use of Riot Pepper Spray (and subsequent decontamination and care needs), SOF ¶¶ 140-141, 143, 148, 151, 152, 153[7]; (ii) the failure to supervise Tipton employees' work assignments, allowing untrained,

---

[6] The Supervisor Defendants argue they are not subject to *Monell* liability, and Plaintiff agrees.
[7] Officers received no formal instruction on MDOC policy contents. SOF ¶¶ 140-141, 143. They were never trained that intoxicated individuals are more affected by OC spray or that OC-

inexperienced, and overworked employees to staff the Segregation Unit, SOF ¶¶ 154-155, 173, 175, 355-358, 394, 527; (iii) allowing untrained and inexperienced employees sit watch over Brandon, without ensuring Brandon had adequate medical care, SOF ¶¶ 154-155, 355-358. Whether she failed to supervise these employees or allowed the policy of placing untrained, inexperienced, and overworked employees in critical positions at Tipton, summary judgment as to Precythe should be denied.

**Deputy Director Sturm.** As MDOC Deputy Director, Sturm was responsible for: "administering and overseeing the prisons, including but not limited to the training of officers, the healthcare of inmates, and otherwise creating, implementing, and executing policies, procedures, protocols, and/or customs with respect to the operations of the MDOC." SOF ¶ 7. Sturm did not implement any training – formal or otherwise – on critical policies or the use of Riot Pepper Spray (and subsequent decontamination and care needs), SOF ¶¶ 140-141 143, 149, 151, 152, 153, which contributed to Brandon's death. Sturm failed to supervise the Tipton employees' work assignments that affected the healthcare of inmates, allowing untrained, inexperienced, and overworked employees to staff the Segregation Unit, SOF ¶¶ 154-155, 173, 175, 355-358, 394, 527, which contributed to Brandon's death. He allowed untrained and inexperienced employees sit watch over Brandon, without ensuring Brandon had adequate medical care, SOF ¶¶ 355-358, which contributed to Brandon's death. Moreover, Centurion only provided healthcare when called by MDOC employees, SOF ¶¶ 75, 333 and yet MDOC completely ignored Brandon's serious need for medical care for hours. SOF ¶¶ 325, 363-388, 392-396, 402, 404-417. And Sturm failed to ensure Centurion employees were trained on MDOC policies or inmate care. SOF ¶¶ 72-76. These faults lie squarely in Deputy Director Sturm's areas of responsibility. Whether he failed to supervise these employees or allowed the policy of withholding medical care from inmates, summary judgment as to Sturm should be denied.

---

sprayed individuals should be kept sitting upright. SOF ¶¶ 151, 156. Officers were incorrectly trained not to decontaminate intoxicated inmates. SOF ¶¶ 150-151, 532. Officer Barker was never trained on dry cell observation yet was assigned to observe Brandon alone. SOF ¶¶ 154-155, 355-358. Nurses were not trained on MDOC policies. SOF ¶¶ 75-78.

***Warden Van Loo.*** Van Loo was responsible for overseeing Tipton, including officer training, inmate medical treatment, and policies regarding administrative segregation SOF ¶¶ 28-29. Van Loo was either directly involved in approving the use of force against Brandon on April 7, 2023, or in permitting his name to be put on a cover-up memo. SOF ¶¶ 238, 241. Van Loo did not implement any training – formal or otherwise – on critical policies or the use of Riot Pepper Spray (and subsequent decontamination and care needs), SOF ¶¶ 140-141, 143, 148, 151, 152, 153 which contributed to Brandon's death. He failed to supervise the Tipton employees' work assignments, allowing untrained, inexperienced, and overworked employees to staff the Segregation Unit, SOF ¶¶ 154-155, 173, 175, 355-358, 394, 527, which contributed to Brandon's death. He allowed untrained and inexperienced employees sit watch over Brandon, without ensuring Brandon had adequate medical care, SOF ¶¶ 355-358, which contributed to Brandon's death. Van Loo was demoted in February 2024. SOF ¶ 434. Whether he failed to supervise these employees or allowed the policy of excessive force and withholding medical care from inmates, summary judgment as to Van Loo should be denied.

Plaintiff's experts confirm the systemic supervisory failures at issue. Mr. Adee opined that TCC staff provided "inadequate supervision" of both Mr. Pace and Officer Barker. SOF ¶ 523. Dr. Hughes characterized Brandon's care as "appalling." SOF ¶ 478.

Further, Director Precythe, Deputy Director Sturm, and Warden Van Loo were on notice of a pattern of constitutional violations at MDOC facilities involving OC spray use and denial of medical care. SOF ¶¶ 533-538. *See Est. of Taylor v. Denver Health & Hosp. Auth.*, No. 1:23-cv-02355-CNS-KAS, 2024 U.S. Dist. LEXIS 149013, at *57-58 (D. Colo. Aug. 20, 2024). For these reasons, genuine issues of material fact preclude summary judgment on Counts 6, 7, and 8 as to the Supervisor Defendants.

### B. The Correctional Officers are liable under § 1983 for their personal involvement.

The record establishes each individual Correctional Officer Defendant's personal involvement in the constitutional violations at issue. *See,* Section VI(B), *supra.* Plaintiff's

24

experts confirm that the Correctional Officers' acts involved "unreasonable, unjustified, and excessive force," SOF ¶ 515, and "appalling" care, SOF ¶ 478.

**VIII.    Genuine Issues of Material Fact Preclude Summary Judgment On  Plaintiff's Equal Protection Class-Of-One Claim (Count 5).**

Defendants argue Plaintiff fails to establish a class-of-one equal protection claim because (1) Plaintiff has not shown "intentional or purposeful discrimination," (2) the class-of-one theory is limited by *Engquist*'s discretion doctrine, and (3) Plaintiff fails to identify similarly situated comparators. ECF 282. Each argument fails.

A class-of-one claim requires showing the plaintiff "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Mathers v. Wright*, 636 F.3d 396, 399 (8th Cir. 2011).[8] The record provides the "specific and detailed account" that *Nolan v. Thompson*, 521 F.3d 983, 990 (8th Cir. 2008), requires. At Tipton, drugs were a persistent problem; officers encountered up to eight intoxicated individuals in a single day. SOF ¶¶ 188-189. When an intoxicated individual was not a security threat, they were routinely taken to medical before dry cell placement. SOF ¶ 46. Officer Roach testified that intoxicated individuals in dry cells are "just observed in case they need medical assistance." SOF ¶¶ 52, 135.

Brandon, by contrast, was not taken to medical after ingesting methamphetamine. SOF ¶¶ 199, 242-243, 252-253. He was sprayed at point-blank range with riot-grade OC spray despite being drug-impaired. SOF ¶¶ 268-270. He received only 58 seconds of decontamination, was placed in an unremediated cell, and was abandoned for three hours and thirty-six minutes without a medical check. SOF ¶¶ 392-393. No EMS was ever called despite the manufacturer's warning. SOF ¶¶ 482, 487. This is not a case where Plaintiff merely says "the magic words." *Cf. Charleston v. Bd. of Trs.*, 741 F.3d 769, 775 (7th Cir. 2013). The record demonstrates in granular

---

[8] This Court has already denied a motion to dismiss Count 5, holding that Plaintiff plausibly alleged a class-of-one claim. *See* ECF 171 at 8-9. Plaintiff may properly plead alternative theories of recovery. *Babcock & Wilcox Co. v. Parsons Corp.*, 430 F.2d 531, 536 (8th Cir. 1970).

25

detail that Brandon received fundamentally different treatment from what MDOC's own witnesses described as standard practice.

MDOC's reliance on *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 602-604 (2008), is misplaced. *Engquist* involved public employment decisions, not compliance with mandatory correctional protocols. The challenged conduct here is not discretionary decision making; it is the failure to follow mandatory, written protocols that left no room for variation. When there is a "clear standard against which departures … [can] be readily assessed," *id*. at 602, the class-of-one theory applies. MDOC's policies provide precisely such a standard, and the evidence shows Defendants departed from them in treating Brandon while adhering to them for other inmates.

A reasonable jury could conclude Brandon was intentionally treated differently and that the differential treatment bore no rational relation to any legitimate penological interest. These inherently fact-intensive inquiries are inappropriate for summary judgment. *See Mathers*, 636 F.3d at 399; *Phillips v. Norris*, 320 F.3d 844, 848 (8th Cir. 2003).

## IX. Defendants Are Not Entitled to Qualified Immunity on Plaintiff's Deliberate Indifference Claim (Count 4).

As discussed *supra,* to determine whether Defendants are entitled to qualified immunity, this Court must decide whether the facts "make out a violation of a constitutional right." *Pearson*, 555 U.S. at 232. "Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* (citation omitted).

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Johnson v. Leonard*, 929 F.3d 569, 575 (8th Cir. 2019) (alteration in original) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). The failure to provide proper medical care violates the Eighth Amendment when a prison official is "deliberately indifferent to the prisoner's serious medical needs." *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 795 (8th Cir. 2006) (citing *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)). "[I]t is well settled that providing no

26

medical care in the face of a serious health risk constitutes deliberate indifference." *Ortiz v. City of Chicago*, 656 F.3d 523, 538 (7th Cir. 2011) (reversing the grant of summary judgment where the "claim is that each of the defendants knew that [the arrestee] suffered from a serious medical condition, yet they failed to take any step in response"). To prevail on an Eighth Amendment claim of deliberate indifference to serious medical needs, a plaintiff must establish two elements: (1) an objectively serious medical need, and (2) that prison officials actually knew of but deliberately disregarded that need. *See Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011).

Defendants' argument that they merely relied on medical staff but didn't actually know of or disregard Brandon's medical needs flies in the face of the evidence. *See, e.g.,* SOF ¶¶ 498, 506, 518. *See also* Ex. 28 Adee Rep. 43; Ex. 67 Hughes Rep. 12. The fact that Centurion nurses did come to segregation at brief (and inadequate) intervals does not excuse prison officials' separate duties. If that were the case, there would have been no need for MDOC to have in place policies requiring constant observation of Brandon, two-hour restraint checks, or policies that should have prompted the Correctional Officers to seek immediate medical attention based on Brandon's erratic behavior.

The right to receive medical care for a serious medical need has been clearly established since *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). More specifically, the failure to provide medical care to an inmate who has ingested drugs or is in obvious distress after chemical agent use violates the Eighth Amendment. *See Farmer*, 511 U.S. at 837; *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011). No reasonable officer would believe that abandoning a methamphetamine-impaired, OC-contaminated inmate for nearly four hours without medical treatment was lawful. Qualified immunity on Count 4 should be denied.

## X.  Defendants Are Not Entitled To Qualified Immunity On Count 8 (Deprivation Of Companionship).

The Supreme Court has recognized a liberty interest which parents and children have in the care and companionship of each other. *See Lehr v. Robertson*, 463 U.S. 248, 258 (1983) ("…the Court has found that the relationship of love and duty in a recognized family unit is an

27

interest in liberty entitled to constitutional protection."). Defendants' argument that deprivation of companionship is not a clearly established constitutional right for adult children misquotes the Eighth Circuit. ECF 282 at 20 (citing *Myers v. Morris*, 810 F.2d 1437, 1462 (8th Cir. 1987)).

The Eighth Circuit did not limit the right to minor children, but in fact stated that abusive parents of minor children are not entitled to the constitutional protection afforded family units. *Myers*, 810 F.2d at 1462 ("The liberty interest in familial relations is limited by the compelling governmental interest in protection of minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves. *See, e.g., Fitzgerald v. Williamson*, 787 F.2d 403, 408 (8th Cir. 1986) ("It does not shock our conscience or otherwise offend our judicial notions of fairness to hear that caseworkers responsible for an allegedly abused child arranged for the child to be examined by a psychologist and, after receiving confirmation of child abuse, reduced the parents' visitation rights and permitted the child to remain with her foster parent when the foster parent moved out of the parents' geographical area."))). Moreover, Missouri's wrongful death statute expressly recognizes the rights a mother has to seek recovery for wrongful death. R.S. Mo. § 537.080.

No reasonable officer would believe that the course of conduct documented here — spraying a drug-impaired inmate with riot-grade OC spray, denying medical care for hours, and allowing him to die alone — would not give rise to liability to the decedent's family. At minimum, the underlying facts are in dispute, and the clearly-established question should not be resolved on summary judgment. Qualified immunity on Count 8 should be denied.

**XI.    Plaintiff's Lost Chance of Recovery and Survival Claim (Count 10) Survives Summary Judgment.**

Defendants argue Count 10 should be dismissed because the survival statute only applies to "non-fatal personal injuries where the injured party later dies of unrelated causes," and the injuries alleged are "the exact injuries that … caused his death." ECF 282 (citing *Andrews v. Neer*, 253 F.3d 1052, 1057 (8th Cir. 2001)). This fails for two reasons. First, Missouri law expressly permits a plaintiff ad litem to plead a lost chance of recovery claim in the alternative to

a wrongful death claim. R.S. Mo. § 537.021.1(1); *Markham v. Fajatin*, 325 S.W.3d 455, 458 (Mo. Ct. App. 2010). *See also* Fed. R. Civ. P. 8(d)(2). Second, the injuries causing Brandon's pre-death suffering are not necessarily the same injuries causing his death. Defendants argue that Brandon's death was caused by methamphetamine intoxication. Ex. 38 Newman Death Investigation Rep., DOC-000009-000012. But a jury could find that his pre-death suffering — the chemical agent burning on his skin and eyes, prolonged OC exposure in an unremediated cell, pain from restraints that migrated up to his chest, and distress of being ignored for hours — were distinct, non-fatal injuries caused by Defendants' conduct. SOF ¶¶ 281-287, 289, 292-308, 314, 317-318, 322, 346-347, 364-388, 392-393. Dr. Hughes opined that Brandon's "condition was initially treatable, if promptly addressed, and recovery would in all likelihood have been the ultimate outcome." SOF ¶ 499. Summary judgment on Count 10 should be denied.

## XII. The Record Demonstrates that the MDOC Defendants Violated the Missouri Sunshine Law (Count 12).

Defendants argue Plaintiff's Sunshine Law claim fails because the requests were not directed to the "custodian of records" as required by R.S. Mo. § 610.023.[9] Missouri's Sunshine Law requires each public governmental body to appoint a custodian responsible for records maintenance. R.S. Mo. § 610.023.1. A knowing or purposeful violation subjects the governmental body and individual employees to civil penalties. R.S. Mo. § 610.027.3; *Hynes v. Mo. Dep't of Corr.*, 689 S.W.3d 516, 528 (Mo. Ct. App. 2024); *Draper v. City of Festus*, No. 4:11cv1652 TCM, 2013 U.S. Dist. LEXIS 148122, at \*92 (E.D. Mo. Oct. 15, 2013).

The record demonstrates that Plaintiff submitted records requests beginning within days of Brandon's death, directed to Warden Van Loo and General Counsel Briesacher. SOF ¶ 539. MDOC treated this as a Sunshine Law request. SOF ¶ 540. Subsequent requests followed on at least eight occasions from May through October 2023 — a sustained pattern over nearly six months. SOF ¶¶ 543, 551, 555-556, 560, 562, 564, 568, 573-574. Despite these repeated requests, MDOC provided only limited medical records and refused to produce surveillance

---

[9] Plaintiff agrees that Precythe, Foley, Sturm, Moseley and Terry should be dismissed from Count 12.

videos, investigation reports, and other key documents. SOF ¶¶ 547-548, 552-554, 557, 561, 569-571, 575, 581.

MDOC's custodian-of-records defense is a technical objection that cannot survive summary judgment. The requests were directed to the Warden and General Counsel, who personally reviewed and made determinations about production. SOF ¶¶ 539, 565. Missouri courts have rejected such technical defenses where the governmental body received, acknowledged, and processed the requests. *See Hynes*, 689 S.W.3d at 528.

The evidence establishes a violation here. First, MDOC did not respond to the requests within three business days as required by R.S. Mo. § 610.023.3. Second, Breisacher personally reviewed the investigation report and "determined it not to be an open record." SOF ¶¶ 565-566, 581. He admitted a general practice of not producing "closed records" in response to Sunshine Law requests. SOF ¶¶ 566, 569-570.

MDOC has been sued for Sunshine Law violations multiple times, and in 2016, the Missouri Court of Appeals found that MDOC, acting through Briesacher, knowingly violated the Sunshine Law by refusing to produce unredacted records. *ACLU of Mo. Found. v. Mo. Dep't of Corr.*, 504 S.W.3d 150, 156 (Mo. Ct. App. 2016). *See also Hynes*, 689 S.W.3d at 528-29 (finding MDOC acted "with the intent to achieve some purpose by violating the Sunshine Law, namely, to hinder Hynes from pursuing a potential claim against [M]DOC relating to her son's death.").

The parallels to *Hynes* are striking: in both cases, a mother sought records about her son's death in an MDOC facility; MDOC provided partial records but refused key documents including investigation reports and video; and MDOC invoked "closed records" exemptions. These facts establish a knowing and purposeful violation. Summary judgment on Count 12 should be denied.

## XIII. Conclusion

For these reasons, Plaintiff respectfully requests that the Court deny the MDOC Defendants' Motion for Summary Judgment, and for any other relief this court deems just.

30

Dated:  May 4, 2026                     Respectfully submitted,


                                        By: */s/ Elizabeth A. Fegan*
                                        Elizabeth A. Fegan, Esq. (*pro hac vice*)
                                        Timothy A. Scott, Esq. (*pro hac vice*)
                                        Shannon S.F. Lohrentz, Esq. (*pro hac vice*)
                                        FEGAN SCOTT LLP
                                        150 S. Wacker Dr., 24th Floor
                                        Chicago, IL 60606
                                        Phone: 312.741.1019
                                        Fax: 312.264.0100
                                        beth@feganscott.com
                                        tim@feganscott.com
                                        shannon@feganscott.com

                                        Tom Porto, Esq.
                                        Bar No. 59716
                                        Popham Law Firm
                                        712 Broadway Blvd., #100
                                        Kansas City, MO 64105
                                        Ph: (816) 221-2288
                                        Fax: (816) 221-3999
                                        tporto@pophamlaw.com

                                        *Counsel for Plaintiff Tammy Reed*


31

**CERTIFICATE OF SERVICE**

I hereby certify that on May 4, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that the foregoing document is being served on all counsel of record or parties registered to receive CM/ECF Electronic Filings upon the following.

Dennis S. Harms
Alec D. Jarvis
SANDBERG PHOENIX & von GONTARD P.C.
dharms@sandbergphoenix.com
ajarvis@sandbergphoenix.com
Attorneys for the Centurion Defendants

Kelli Reichert
Assistant Attorney General
Kelli.reichert@ago.mo.gov
Attorney for MODOC Defendants

/s/ Elizabeth A. Fegan
Elizabeth A. Fegan

1