TAMMY REED, *Individually and as* )
*Next-of-Kin of BRANDON PACE, deceased,* )
                                   )
           Plaintiff , )
                                     )
v. ) Cause No. 2:24-cv-04152-BCW
                                     )
*MISSOURI DEPARTMENT OF* )
*CORRECTIONS, et al.,* )
                                     )
           Defendants. )

## DEFENDANTS CENTURION OF MISSOURI, LLC;S, MHM SERVICES, INC.'S, ANNA MEFFORD, LPN'S, CARA CONNER, LPN'S AND NICOLE TOWNSEND, LPN'S MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendants Centurion of Missouri, LLC ("Centurion of Missouri"), MHM Services, Inc. ("MHM Services"), Anna Mefford, LPN ("LPN Mefford"), Cara Conner, LPN ("LPN Conner"), and Nicole Townsend, LPN ("LPN Townsend") (collectively, the "Centurion Defendants"), through their attorneys at Sandberg Phoenix & von Gontard, P.C., for their Motion for Judgment as a Matter of Law, state as follows:

### INTRODUCTION AND SUMMARY OF ARGUMENT

Until trial began in this case, Plaintiff Tammy Reed ("Plaintiff"), the Centurion Defendants, and this Court all operated with the understanding that her claims were based on the death of Brandon Pace ("Pace"). Plaintiff's Count IV (Deliberate Indifference), for example, explicitly references deprivation of life as the constitutionally prohibited action. (Pl.'s Second Am. Complaint, ¶ 197) ("The Fourteenth Amendment prohibits the

43588652.v1

deprivation of life without due process of law."). The remainder of Plaintiff's Second Amended Complaint focuses on factors and actions allegedly contributing to Pace's death.

Due to this framing, the parties prosecuted or defended this matter as an action concerning what caused Pace's death. *See, e.g.* (July 15, 2026 Order, p. 1) (noting Plaintiff alleged "constitutional and state law claims related to the death of Decedent while he was in the custody of the Missouri Department of Corrections ("MDOC") at the Tipton Correctional Center."). Notably, Plaintiff's expert Dr. Timothy Hughes sought to opine on Pace's cause of death, not as a contributing factor, but as to the cause, but this testimony was stricken by the Court. *See* (July 15, 2026 Order, pp. 4-5). In response, the Centurion Defendants submitted multiple experts to counter Plaintiff's causation theory. And, as the Court recognized in its July 15, 2026 Order, all expert testimony in this case revolved around the cause of Pace's death. Nevertheless, at trial Plaintiff initially shifted away from the death of Pace and toward something else. *See* (Pl.'s Trial Brief, p. 2-6). This shift in claims and theories of liability did not reflect what was substantially pled and worked up in discovery in this matter.

Plaintiff then pivoted again, and sought testimony from Dr. Hughes as to whether the conduct of the nurses "contributed to cause" Mr. Pace's death. Trial was the first time Dr. Hughes had offered such an opinion. As more fully explained below, "contributed to cause" is not a sufficient legal basis upon which Plaintiff's federal claims can be submitted to the jury.

In addition, Plaintiff cannot establish deliberate indifference against MHM Services or Centurion of Missouri from a policy, custom, or practice involving events occurring on

2

a single day to one inmate. Plaintiff also cannot show any conduct by individual Centurion Defendants constituted deliberate indifference. Moreover, Plaintiff lacks evidence that any conduct by the Centurion Defendants directly caused injury.

These failures by Plaintiff, in addition to her improper introduction of new claims and opinion evidence violating the Federal Rules of Civil Procedure, mean none of her claims should be submitted to a jury, and this Court should grant judgment as a matter of law in favor of the Centurion Defendants.

## PERTINENT FACTUAL AND PROCEDURAL BACKGROUND

### A.  Summary of Events on April 7, 2023[1]

After an altercation with another offender on April 7, 2023, Pace was taken to administrative segregation by security staff. Pace's initial segregation evaluation was performed by LPN Mefford. LPN Mefford attempted to take Pace's vitals.

While Pace was in administrative segregation, and after LPN Mefford's initial segregation evaluation, he informed custody staff that he was in possession of methamphetamine.  Multiple staff members tried to persuade Pace to turn over the powder substance, but Pace refused.

Leonard Montes observed Pace pouring a "fingernail's amount" of white powder into his mouth, and subsequently notified LPN Townsend. After Pace consumed the white powder, Pace was given a verbal directive by Lt. Randy Witt to change into an orange

---

[1] For the sake of brevity, Defendants have summarized the events of April 7, 2023. For further description, Defendants hereby incorporate their Motion and Memorandum of Law in Support of Summary Judgment. *See* (Docs. 252 and 253).

43588652.v1

jumpsuit so that he could be strip searched and placed on dry cell status. Pace did not comply with Witt's verbal directive. *Id.*

Due to Pace's lack of cooperation, Lt. Witt used OC spray to gain compliance. After Pace was placed in restraints Lt. Witt requested a medical assessment. LPN Townsend arrived within one minute of that request. Lt. Witt informed LPN Townsend that Pace needed to have his eyes and face washed due to the pepper spray. This was the first notification to any medical provider that pepper spray had been used. LPN Townsend examined Pace's restraints and left to obtain materials to decontaminate Pace.

LPN Townsend, LPN Mefford and Robin Behr, RN, MSN arrived in the segregation area roughly seven minutes later. LPN Townsend and LPN Mefford wiped Pace's face with gauze and flushed his eyes with a liter of saline. Under MODOC policy, offenders placed on dry cell status who are sprayed are not permitted to shower.

Pace was then escorted into another dry cell, and thereafter LPN Townsend and LPN Mefford examined Pace's restraints and performed a nursing assessment. Pace was not violent or combative when LPN Townsend and LPN Mefford checked his restraints and performed this assessment. Pace was able to talk, breathe normally, was not coughing and was not in distress when LPN Townsend and LPN Mefford left his cell. Behavioral Health and Dr. Lovelace were notified that Pace was on dry cell status.

4

Because Pace was neither violent or combative, the Dry Cell Protocol[2] directed that Pace needed to be reassessed in four hours. After LPN Townsend and LPN Mefford left Mr. Pace's cell, he was continuously monitored in the dry cell by Corrections Officer Lane Barker. Barker never contacted medical while he was monitoring Pace until he called a Code 16 at 9:38 p.m.

Before LPN Townsend and LPN Mefford left Tipton Correctional Center that evening, one or both communicated with LPN Conner regarding Pace. Conner was told that Pace was potentially under the influence of an unknown substance, that he had been pepper sprayed, and that she was supposed to reassess him at 10 p.m.

LPN Conner arrived to reassess Pace at approximately 9:30 pm. LPN Conner checked Pace's cuffs on his hands and ankles, and asked him to roll over so she could perform a more thorough assessment. Pace had the ability to roll himself from side to side and front to back when LPN Conner was in his cell. When LPN Conner assessed Pace, his distal pulses were palpable, and he was breathing without difficulty.

Pace was responsive to Corrections Officer Lane Barker until approximately 9:38 pm. LPN Conner returned to Pace's cell at approximately 9:42 pm after corrections staff called a Code 16. When LPN Conner arrived, Pace was not breathing. LPN Conner provided Pace with CPR and administered Narcan. EMS was subsequently called.

---

[2] The Dry Cell Protocol used by LPN Mefford and LPN Conner to chart their encounters with Pace was a policy of the Missouri Department of Corrections and was part of the Department's Medical Records System.

5

An autopsy of Pace was performed on April 11, 2023. The medical examiner who performed the autopsy of Pace concluded the sole cause of death was methamphetamine intoxication.

### B. Plaintiff's Experts and the Court's Ruling on the Centurion Defendants' Motions to Exclude Expert Testimony

Plaintiff submitted two experts to opine on the conduct of the nurses in this case. Plaintiff sought to rely on Dr. Timothy Hughes to link the conduct of the nurses to Pace's death. Both Dr. Hughes' report and his deposition testimony unequivocally state that his opinion was that the conduct of the nurses caused Pace's death. Plaintiff sought to rely on Paul Addee ("Mr. Addee") to opine that the nurses failed to properly decontaminate Pace after he was pepper sprayed.

On March 13, 2026, the Centurion Defendants filed Motions to Exclude Testimony and Opinions of Dr. Hughes and Mr. Addee. On July 15, 2026, the Court issued an order granting the Centurion Defendants' Motion in part (the "July 15 Order"). In particular, the Court agreed Dr. Hughes' opinions concerning "[d]ecedent's cause of death, toxicology generally, and nursing credentialing" should be excluded. The Court reached its determination because "Dr. Hughes admit[ted] he is not an expert in toxicology and h[ad] not conducted an autopsy since 2011." As for Mr. Addee, the Court prohibited him from "providing opinions on the medical standard of care and whether the Centurion Defendants met the medical standard of care."

### LEGAL STANDARD

43588652.v1

Rule 50(a)(1) of the Federal Rules of Civil Procedure provides that "if a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," the court may resolve the issue against that party and grant judgment as a matter of law on any claim or defense that can be maintained or defeated only with a favorable finding on that issue.

A party must submit a motion for judgment as a matter of law under Rule 50(a) before the case is submitted to the jury. *See* FED. RUL. CIV. PROC. 50(a)(2). The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment. *Id*. The court must review all the evidence in the record and draw all reasonable inferences in favor of the non-moving party, without making credibility determinations or weighing the evidence. *See Bamford, Inc. v. Regent Ins. Co.,* 822 F.3d 403, 410 (8th Cir. 2016) (citing *Townsend v. Bayer Corp.*, 774 F.3d 446, 456 (8th Cir. 2014) and *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000)). A court cannot grant judgment as a matter of law unless "all the evidence points in one direction and is susceptible to no reasonable interpretation" supporting a jury verdict in the opposing party's favor. *See Monohon v. BNSF Ry. Co.,* 17 F.4th 773, 784 (8th Cir. 2021).

## ARGUMENT

**I.** **Plaintiff lacks evidence that any conduct by the Centurion Defendants "in fact caused" injury. Thus, Plaintiff cannot, as a matter of law, submit the deliberate indifference claim pleaded in Plaintiff's Second Amended Complaint to the jury**

43588652.v1

The Eighth Circuit has long held that "when an injury is sophisticated, proof of causation generally ***must be established by expert testimony***." *See Robinson v. Hager*, 292 F.3d 560, 564 (8th Cir. 2002) (emphasis added). There, a prisoner alleged that the defendants' failure to provide his blood pressure medication caused his stroke. The Eighth Circuit reversed a verdict in favor of the plaintiff, holding that because the plaintiff "failed to offer any expert evidence showing that defendants' actions caused him to suffer his stroke," the plaintiff failed to establish even a *prima facie* Eighth Amendment violation. *Robinson* is not an outlier, and in cases in which the casual pathway between the alleged constitutional deprivation and claimed injury runs through physiological processes, the lay juror cannot assess the cause of the injury based on their own common experience. Expert testimony in such cases is indispensable. *See Alberson v. Norris*, 458 F.3d 762, 765-766 (8th Cir. 2006) (affirming judgment when plaintiff lacked expert proof tying alleged deliberate indifference to prisoner's death).

As the Court explained in *Calloway v. Miller*, 147 F.3d 778, 781 (8th Cir. 1998), a plaintiff " must establish that the defendants' unconstitutional action was the 'cause in fact' of the plaintiff's injury." Conduct is the "cause in fact" of an outcome "if the result would not have occurred but for the conduct." *Id.*; *see also Gibson*, 433 F.3d at 646 (citing *Calloway* and explaining that plaintiff must prove alleged unconstitutional actions "in fact caused" injury).

In *Gibson*, the Eighth Circuit explained why plaintiffs in deliberate indifference cases are required to establish "cause in fact" rather than simply hypothesize various factors that could have contributed to an adverse outcome. The plaintiffs in *Gibson* presented

8

evidence that delays in treatment, "poor attitudes," a failure to train medical personnel, an infection, a failure to provide a written treatment plan, a medical restriction, a failure to provide adequate facilities, and other factors caused the need for amputations. 433 F.3d at 645-46. But the Court, noting "a reasonable juror could not determine whether delays in treatment or other factors caused the need for the amputations," agreed with the district court that the defendants were entitled to judgment as a matter of law. *Id.* at 646-47.

In *Robinson,* the Eighth Circuit reversed a district court for failing to enter judgment as a matter of law because while a reasonable juror might be able to infer the defendants knew of the plaintiff's hypertension and ignored his requests concerning that condition, the jury was not permitted to infer that any lapse in medication caused a stroke. *Id.* at 564.

The results in cases like *Robinson* and *Gibson* are entirely consistent with the Eighth Circuit's Model Jury Instructions in cases involving deliberate indifference, which require a showing that "as a direct result, the plaintiff was injured." *See* Eighth Circuit Model Jury Instructions (Civil) 4.43, 4.44, 4.47, and 4.48.

Moreover, in a case such as this one in which Plaintiff is alleging a delay in medical care rose to the level of a constitutional violation, Plaintiff "***must place verifying medical evidence*** in the record to establish the detrimental effect in medical treatment." *See Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (emphasis added); *see also Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) ("A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that those delays adversely affected his prognosis). Regardless of whether a layperson could recognize an individual's need for medical attention, the Eighth

9

Circuit expressly rejected the argument that a plaintiff was excused from placing verifying medical evidence into the record demonstrating that an alleged delay in care was linked to the injury. *See Jackson v. Riebold*, 815 F.3d 1114, 1120 (8th Cir. 2016) (citing *Coleman v. Rahija*, 114 F.3d 778 (8th Cir. 1997)).

In this case, Plaintiff has done nothing more than suggest certain actions were a factor in causing injury. There is no evidence—from an expert or otherwise—that any particular conduct "in fact caused" injury. Put another way, there is no basis for this Court to submit Plaintiff's claim to a jury when no reasonable juror could find—as required under all Eighth Circuit deliberate indifference instructions—that "as a direct result" of any particular conduct, "the plaintiff was injured." For these additional reasons, the Court should enter judgment as a matter of law in favor of the Centurion Defendants.

## II. Plaintiff cannot establish deliberate indifference from a policy, custom, or practice involving events occurring on a single day to one inmate.

As an initial matter, and as discussed above, Plaintiff does not have a basis for her underlying Eighth Amendment deliberate indifference claims against the Centurion Defendants. Because Plaintiff cannot prove a constitutional violation took place, Plaintiff also fails in making her case for *Monell* liability on the part of the Centurion corporate defendants, MHM Services and Centurion of Missouri. *See e.g. Brabbit as Tr. for Nild v. Capra*, 59 4th 349, 354 (8th Cir. 2023); *Whitney v. City of St. Louis, Missouri*, 887 F.3d 857, 861 (8th Cir. 2018).

Further, Plaintiff cannot show MHM Services or Centurion of Missouri had a policy, custom, or practice that caused any injury. *See Corwin v. City of Indep.*, 829 F.3d

10

695, 699 (8th Cir. 2016) (citing *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014) (unconstitutional policy or custom). Such is required for Plaintiff to show an allegedly unconstitutional policy or custom was the "moving force" behind any alleged unconstitutional misconduct.[3] *Id.*

Conduct allegedly occurring on one day to a single inmate cannot establish the existence of any policy, custom, or practice constituting deliberate indifference, because there can be no notice to policymaking officials placing them in a position to take action. *See Johnson v. Douglas Cnty. Med. Dep't*, 725 F.3d 825, 828-29 (8th Cir. 2013) (finding policymaking officials lacked sufficient notice because plaintiff provided no evidence to suggest they received notice of denial of medication in early morning hours of one day or made deliberate choice to ignore or tacitly authorize denial).

This case is much unlike *McGautha v. Jackson Cnty., Mo. Collections Dep't*, 36 F.3d 53, 55 (8th Cir. 1994), in which the conduct at issue occurred against the same inmate over the course of three years by different government employees. Here, however, the conduct in question occurred on a single day (April 7, 2023) to one individual. Plaintiff cannot point to any alleged misconduct outside the April 7, 2023 events to show Centurion of Missouri or MHM Services was on notice of any allegedly unconstitutional activity. For

---

[3] To succeed at trial on her *Monell* claim, Plaintiff must prove (1) there was a failure to train or supervise or an unconstitutional policy or custom; (2) that was the moving force behind the alleged constitutional violation; and (3) that directly caused injury. *See, e.g., Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006) (emphasizing plaintiff must prove alleged unconstitutional actions "in fact caused" injury); *see also* Eighth Circuit Model Jury Instructions 4.43, 4.44, 4.47, and 4.48.

43588652.v1

these reasons, there is no reasonable basis upon which a jury could find liability against Centurion of Missouri or MHM Services.

Indeed, this case suffers from the same problem found in *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013), in which the plaintiff argued a defendant's supervision and training practices were improper, without pointing to any evidence of such—other than the incident in question. The plaintiff could not establish that what occurred to a single individual on one day showed the institutional defendant had adopted deficient supervision and training practices that were the product of deliberate and conscious choices. *Id.*

Respectfully, to allow this case to go to a jury under the circumstances presented here would repeat the error committed in *Wedemeier v. City of Ballwin, Missouri*, 931 F.2d 24, 26 (8th Cir. 1991), in which the Eighth Circuit reversed a district court's failure to enter judgment as a matter of law in favor of an institutional defendant when the plaintiffs could point to no incidents other than the one in question, and therefore could not show any policy, custom, or practice violating Section 1983. The Court there emphasized a jury could not infer the existence of an unconstitutional policy "from this single occurrence." *Id.*

Here, as in cases like *Wedemeier* and *Ulrich*, judgment as a matter of law is required because events on a single day involving one individual cannot establish the existence of an actionable custom, practice, or policy. As such, no reasonable jury could find for Plaintiff in this matter, and the Court should enter judgment as a matter of law in favor of the Centurion Defendants.

**III. Plaintiff's 14th Amendment claim fails due to a lack of proof that Defendants' conduct was directed at the familial relationship**

43588652.v1

Plaintiff's Fourteenth Amendment claim has a fatal flaw: there is absolutely no evidence within the record showing the Centurion Defendants' conduct "was intentionally directed at the familial relationship." *Partridge v. City of Benton, Arkansas*, 929 F.3d 562, 568 (8th Cir. 2019). Setting that aside, as with her deliberate indifference claim, Plaintiff cannot establish causation without expert testimony opining that some conduct on behalf of the Centurion Defendants caused Pace's death. *See Stearns v. Wagner*, 122 F. 4th 699, 704 (8th Cir. 2024). Absent such expert causation testimony, Plaintiff cannot viably claim the Centurion Defendants' conduct caused any alleged loss of companionship or society.

## IV. Plaintiff also cannot show any conduct by any of the individual Centurion Defendants constituted deliberate indifference.

Even after concocting new theories of liability on the eve of trial, Plaintiff still cannot show that any of the individual Centurion Defendants were deliberately indifferent. Doing so requires Plaintiff to show (1) Pace had objectively serious medical needs; and (2) the individual Centurion Defendants actually knew of but deliberately disregarded those needs. *Jolly v. Knudsen*. 205 F.3d 1094, 1096 (8th Cir. 2000).

As to the first prong, an objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment or is so obvious that even a layperson would easily recognize the need for a doctor's attention. *Jones v. Minnesota Dept. of Corr.*, 512 F.3d 478, 481 (8th Cir. 2008). "A medical condition is not *per se* obvious to a layperson because it later results in death." *Id.* at 483.

As to the second prong, the Supreme Court has likened deliberate indifference to a criminal recklessness standard, which traditionally contained a subjective component.

43588652.v1

*Farmer v. Brennan*, 511 U.S. 825, 839 (1994). Under this subjective standard, an official is deliberately indifferent if (1) the official has actual knowledge of and disregards an excessive risk to inmate health or safety; (2) the official is aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists; and (3) the official draws that inference. *Id.* at 837. Deliberate indifference requires a highly culpable state of mind approaching actual intent. *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017).

Deliberate indifference is more than gross negligence, and disagreement with treatment decisions does not rise to the level of a constitutional violation. *Jolly,* 205 F.3d at 1096 (8th Cir. 2000). A plaintiff asserting a claim of deliberate indifference "must clear a substantial evidentiary threshold to show that the prison's medical staff deliberately disregarded the inmate's needs." *Meuir v. Green County Jail Employees*, 487 F.3d 1115, 1118 (8th Cir. 2007).

Here, Plaintiff has failed to present evidence sufficient to submit a claim of deliberate indifference to the jury, and the Court should enter judgment as a matter of law in favor of the Centurion Defendants.

### A.     Plaintiff has not shown Pace had a serious medical need.

Though there is no question Pace was high on methamphetamine when he was being evaluated by LPN Townsend and LPN Mefford after being sprayed with OC spray, there was nothing about his behavior indicating the existence of a serious medical need.

This case is akin to *Starks v. St. Louis Cnty.*, 159 F.4th 1146 (8th Cir. 2025), in which a detainee reported withdrawal to a nurse after recently using heroin. The nurse diagnosed the detainee with acute withdrawal syndrome and put him on a protocol to

14

ensure a follow-up reassessment. *Id.* at 1148. Even though there was no question about the detainee experiencing withdrawal symptoms, the Eighth Circuit held the detainee's condition was not so obvious that a layperson would recognize the need for treatment. *Id.* at 1149. The Court noted drug use and withdrawal are common in the carceral setting, and there was nothing in the record showing the detainee's condition was any worse than the average case of a person in withdrawal, despite the detainee complaining of being dehydrated and vomiting. *Id.*

Another similar case is *Grayson v. Ross,* 454 F.3d 802 (8th Cir. 2006), in which the Eighth Circuit held there was insufficient evidence of a serious medical need when there were reports from an arrestee's mother that he had a history of methamphetamine use. Citing the arrestee's cooperation during the booking process, the Eighth Circuit concluded there was no evidence to show it would be obvious to a layperson that immediate medical attention was required, even though the defendant police officer believed the arrestee was under the influence of methamphetamine. *Id.* at 809.

Similarly, in *Reece v. Hale*, 58 F.4th 1027 (8th Cir. 2023), an arresting officer noted an arrestee's "seizure-like activity" in the back of a patrol car during transport to a jail, and the arrestee reported being under the influence of methamphetamine. Despite the history of methamphetamine ingestion and the witnessed seizure-like activity, the Eighth Circuit held "a reasonable jury could not conclude from this description of events that [the defendant] was aware of a serious medical need." *Id.* at 1031. Of note, the *Reece* Court emphasized that (1) drug intoxication is common in the carceral setting; and (2) in a

15

deliberate indifference case the conduct at issue is not to be evaluated "through the lens of 'hindsight's perfect vision.'" *Id.* at 1033-34.

Likewise here, Pace was not suffering from a serious medical need while being assessed by the individual Centurion Defendants. He did not fight LPN Townsend and LPN Mefford when they were decontaminating his face and was non-combative when they checked his restraints. He was able to sit on a bench without help and ask Lt. Witt if he could take a shower. When LPN Townsend and LPN Mefford assessed and decontaminated Pace, Pace allowed them to wash his face, flush his eyes out with saline, and check his ankle and wrist restraints. Similarly, when LPN Conner reassessed Pace at roughly 9:30 p.m., he was able to move on his own. He was not combative during LPN Conner's assessment of the wrist or ankle restraints.

As Dr. Hughes conceded, offenders who are high and have been sprayed with OC spray do not automatically have a serious medical need. There was no objective clinical indication of a medical need requiring emergent transfer to the hospital until roughly 9:40 p.m.

The facts of this case are similar to those in *Starks, Grayson* and *Reece*. Pace was high on methamphetamine and needed time for the drug to work its way out of his system. Laypeople would not consider a person under the influence of a stimulant narcotic to need immediate medical attention absent any symptoms to the contrary, which were not present here. This reality is certainly true in the carceral setting given the prevalence of illicit drug use. Plaintiff has failed to show the presence of a serious medical need, and no reasonable jury could find otherwise. *Jones*, 512 F.3d at 481 (8th Cir. 2008).

16

**B. Even if there were a serious medical need, LPN Townsend, LPN Mefford, and LPN Conner's assessments of Pace and efforts to decontaminate him were not deliberately indifferent.**

Rather than being deliberately indifferent, LPN Townsend and LPN Mefford gently washed Pace's face and carefully assessed him after he was moved to the dry cell. LPN Conner observed Pace's behavior from outside his cell and then spent several minutes inside the cell checking his restraints. Their conduct was far from being criminally reckless.

To be deliberately indifferent, LPN Townsend and LPN Mefford must have been "aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists," and must have also drawn that inference. *Farmer,* 511 U.S. at 837. LPN Townsend was told Pace swallowed a fingernail-sized amount of white powder that was thought to be methamphetamine and knew Pace had been sprayed with OC spray. LPN Mefford and LPN Conner had the same information. With such information in their hands, no reasonable person could conclude their conduct was "so inappropriate as to show intentional maltreatment or a refusal to provide essential care." *See Dulany*, 132 F.3d 1234, 1242 (8th Cir. 1997) quoting *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990).

Much has been made during the life of this case about when a reassessment of Pace should have occurred. Citing a Missouri Department of Corrections policy, Plaintiff alleges Pace should have been reassessed every two hours, not every four hours. But the dry cell protocol the nurses were working from required, in these circumstances a reassessment at four hours, and other MODOC policies also required a 4 four check. Furthermore, a mere violation of a policy is not *per se* deliberate indifference. *Luckert v. Dodge County*, 684

43588652.v1

F.3d 808, 819 (8th Cir. 2012). In this case, the overwhelming balance of the evidence is that Pace was reassessed in accordance with policy.

Combining the limited information LPN Mefford, LPN Townsend, and LPN Conner had; LPN Townsend and LPN Mefford's careful decontamination of Pace; and their substantial compliance with policy, the record does not support a conclusion that they were deliberately indifferent in any aspect of caring for Pace.

## IV. Plaintiff's wrongful death and lost chance of survival claims also fail due to a lack of expert testimony

Plaintiff is also required to have expert causation testimony on her wrongful death claim and lost chance of recovery claim.[4] On the wrongful death claim, Plaintiff needs expert causation testimony to prove that, but for the Centurion Defendants' actions or inaction, Pace would not have died. *See Kivland v. Columbia Orthopaedic Group,* LLP, 331 S.W.3d 299, 305 (Mo. banc 2011). Similarly, on the lost chance of recovery claim, Plaintiff needs expert support to prove that though "it is impossible to establish the patient would have recovered or survived but for the defendant's alleged failure to properly diagnose or treat," there was still a statistically significant chance of recovery. *Id.* (citing *Markham v. Fajatin*, 325 S.W. 3d 455, 458 (Mo. App. 2010). Again, because Plaintiff's

---

[4] The Court previously ruled Plaintiff must put forth competent expert testimony to substantiate her state law claims, noting that "[e]xpert testimony is required to prove causation for Counts 10 and 11." *See* (Doc. 312, p. 33) (citing *Alberson v. Norris*, 458 F.3d 762, 765-766 (8th Cir. 2006) (expert testimony required to prove causation in claims involving mistreatment of prisoner's medical condition); *Sundermeyer v. SSM Reg'l Health Servs.*, 271 S.W.3d 552, 554 (Mo. banc 2008) (expert testimony required to establish causation in medical malpractice case); *Portis v. Greenhaw*, 38 S.W. 3d 436, 441 (Mo. App. 2001) (expert testimony required in wrongful death case against radiologist)).

18

43588652.v1

medical expert on causation has been excluded, no reasonable jury could find in favor of Plaintiff on her lost chance of recovery or wrongful death claims.

Dr. Hughes' opinion that the conduct of the nurses "contributed to cause" Mr. Pace's death is a new and undisclosed opinion. Plaintiff cannot introduce any new evidence to support her lost chance of recovery claim at trial, because such testimony would be in violation of expert disclosure rules. *See e.g. Johnson v. Friesen*, 79 F.4th 939 (8th Cir. 2023) (excluding plaintiff's only causation expert for non-compliance with Rule 26(a)(2)(B)).

## V. Alternatively, Plaintiff Cannot submit both the Lost Chance of Recovery Claim and the Wrongful Death Claim Because the Causation Standards are in Conflict

A wrongful death claim under Section 537.080 RSMo requires proof by a preponderance of the evidence that the defendant's negligence was the but-for cause of death. *See* MO. STAT. ANN. § 537.080. In contrast, a lost chance of recovery or survival claim brought under Missouri's survivorship statute, § 537.020, applies in the medical malpractice context when it is impossible to prove but-for causation for a death; in such a situation, a plaintiff must prove the defendant's negligence caused the loss of a material and statistically significant chance of recovery or survival. *See* § 537.020; §537.021. Despite the permissibility of alternative pleading, the substantive elements of Plaintiff's wrongful death claim and lost chance of survival claim are fundamentally incompatible. *See Hayden v. United States*, Case No. 4:12-cv-2030-DDN, 2013 WL 3148707, at * 2-4 (E.D. Mo. June 19, 2013) (citing *Kivland* v. *Columbia Orthopaedic Grp., LLP,* 331 S.W.3d 299 (Mo. Banc. 2011) and *Wollen v. DePaul Health Ctr.*, 828 S.W.2d 681 (Mo. banc.

43588652.v1

1992)).[5] Given this conflict in causation standards, a reasonable jury could not find for Plaintiff on both claims.

**IV.    Plaintiff's introduction of new claims or opinion evidence violated the Federal Rules of Civil Procedure and should not be submitted to the jury.**

Since the time her experts' opinions on causation were thrown out under *Daubert*, Plaintiff has repeatedly and throughout trial attempted to inject new theories of liability, to the continuing prejudice of the Centurion Defendants and the confusion of the jury.

In particular, Plaintiff now wants to submit claims not based on Pace's death—an event this case revolved around for two years before this Court's recent *Daubert* ruling—but rather, claims that were never pled by her and have never been part of Plaintiff's theory of liability. She wants to shift the case away from Pace's death and toward new theories of liability.

This attempt, which began only on the eve of trial, impermissibly circumvents earlier pleadings—and the whole discovery process in this matter—and unjustly prejudices the Centurion Defendants. Plaintiff should not be permitted to submit new or altered claims or additional theories of liability not previously pled, not previously included in earlier pleadings, and not the focus of discovery in this matter. The remedy is clear: None of these

---

[5] In fact, the Missouri Supreme Court in *Kivland* held that "the language of the survivorship statute and the wrongful death statute are mutually antagonistic. The survivorship statute applies when the injury alleged did not cause death, and the wrongful death statute applies when the injury did cause death." 331 S.W.3d 299, 302 n.3 (Mo. banc 2011). The Court went on to state that "[a] lost chance claim cannot simply reassert a wrongful death claim. Where a plaintiff's lost chance allegations amount to nothing more than "but for the defendant's negligence, the patient would not have died," the claim is a wrongful death claim, not a lost chance claim, and must proceed under § 537.080." *Id.* at p. 305.

43588652.v1

claims should be submitted to the jury, and the Court should enter judgment as a matter of law in favor of the Centurion Defendants.

### A. Plaintiff should not be permitted to add an unpled claim or additional theory of liability, and Rule 15(b) provides no avenue for her to do so.

To advance a claim or theory of liability not previously pled, a plaintiff must seek a mid-trial amendment under Rule 15(b).[6] But under Rule 15(b)(1), such an amendment is not permitted if the objecting party would suffer prejudice. *See St. Joe's Mineral Corp. v. Occupational Safety and Health Review Comm'n*, 647 F.2d 840, 844 (8th Cir. 1981). In particular, "amendment of the pleadings should not be permitted where it would operate to deny a party fair opportunity to present evidence material to newly added issues." *Id.* Notably, courts in the Eighth Circuit have analyzed claims of <u>pre-death deliberate indifference</u> and <u>death-based deliberate indifference</u> as being separate and distinct. *See, e.g., Myers v. Hennepin Cnty, Minnesota*, Case No. 25-CV-2314, 2026 WL 1133708, at *11-13 (D. Minn. Apr. 27, 2026).

Here, until the eve of trial, Plaintiff advanced and pursued a deliberate indifference claim focused and founded upon on Pace's death. Permitting Plaintiff to belatedly amend the pleadings (expressly or otherwise) to include a new and different claim encompassing pre-death deliberate indifference unduly prejudices the Centurion Defendants because they did not have an adequate opportunity to conduct discovery and gather evidence regarding

---

[6] Rule 15(b)(2) permits amendments to the pleadings for issues tried by consent. But the Centurion Defendants have expressly objected to trying any unpled issues, submitting any such issues to the jury, or amending any pleading (expressly or otherwise) to include such issues. Accordingly, Rule 15(b)(2) does not apply and is not available to Plaintiff here.

21

this new theory. Indeed, the expert opinions submitted by all parties focused upon causation of death. Accordingly, because the Centurion Defendants have not been afforded an opportunity to marshal evidence and expert testimony regarding Plaintiff's new theory, Plaintiff should not be permitted to submit such a claim to the jury.

**B.**     **Plaintiff should not be permitted to offer new expert opinions to support unpled claims and eleventh-hour theories of liability.**

Under Rule 26(a)(2), to present a claim premised on pre-death pain and suffering, Plaintiff had to fully and timely disclose expert testimony to that effect, but failed to do so. *See Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (plaintiff "must place verifying medical evidence in the record to establish the detrimental effect in medical treatment"); *see also Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (prisoner alleging delay in treatment must present verifying medical evidence that prison officials ignored acute or escalating situation or that delays adversely affected prognosis).

Under Rule 26(a)(2), a party must provide written reports containing the opinions an expert witness will express and the basis for those opinions. Failure to provide this information should result in their exclusion, along with the expert, under Rule 37(c)(1). This sanction is self-executing unless the failure to disclose was inadvertent or harmless. *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 702 (8th Cir. 2018).

Here, until trial, the parties' expert testimony revolved around Pace's cause of death, not pre-death pain and suffering. Thus, to the extent Plaintiff has offered new, undisclosed expert testimony—or any other purported evidence—to support new claims or additional theories of liability, such evidence, such claims, and such theories are impermissible. As a

43588652.v1

result, the Court should not permit Plaintiff's claims to be submitted to the jury, and should

enter judgment as a matter of law in the Centurion Defendants' favor.

## V. Plaintiff cannot succeed on a punitive damages claim because the standard has not been met.

The facts of this case fall well short of the even higher threshold necessary for a jury

to assess punitive damages.

### A. Federal Claims

Punitive damages are recoverable in a Section 1983 case only when "the defendant's

conduct is shown to be motivated by evil motive or intent, or when it involves reckless or

callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S.

30, 56 (1983). "Section 1983 presupposes that damages that compensate for actual harm

ordinarily suffice to deter constitutional violations." *Memphis Cmty. Sch. Dist. v. Stachura*,

477 U.S. 299, 310 (1986).

When determining whether punitive damages are appropriate, the focus is on the

defendant's intent to determine whether the conduct calls for deterrence and punishment

above and beyond that provided by compensatory damages. *Coleman v. Rahija*, 114 F.3d

778, 787 (8th Cir. 1997).

In *Coleman,* the Eighth Circuit overturned a verdict awarding punitive damages.

There, the defendant nurse did not transfer a pregnant offender to the hospital for hours

after the offender went into premature labor. *Id.* at 782-83. The Eighth Circuit reasoned

that because the defendant nurse attempted to follow guidelines when providing care to the

43588652.v1

offender, her conduct "was not sufficiently egregious to justify the imposition of punitive damages." *Id.* at 788.

The circumstances of this case clearly show punitive damages are inappropriate. There is no evidence the Centurion Defendants were motivated by evil intent or were recklessly or callously indifferent to Pace's constitutional rights. LPN Townsend and LPN Mefford provided Pace care and assessed him despite the discomfort they had to endure as a result of the lingering presence of OC spray. LPN Conner reassessed Pace before the four-hour timeframe prescribed by the Dry Cell Protocol. Nothing about their actions showed evil intent or malice toward Pace.

### B. State Law Claims

On the Plaintiff's state law claims, Section 538.210 RSMo provides as follows:

> [A]n award of punitive damages against a health care provider…shall be made only upon a finding by the jury that the evidence clearly and convincingly demonstrated that the health care provider intentionally caused damage to the plaintiff or demonstrated malicious misconduct that caused damage to plaintiff. Evidence of negligence, including but not limited to, indifference to or conscious disregard for the safety of others shall not constitute intentional conduct or malicious misconduct.

Thus, to obtain punitive damages, Plaintiff must present clear and convincing evidence that the Centurion Defendants intended to harm Pace or demonstrated malicious misconduct that harmed him. Evidence of indifference to or conscious disregard of his safety is not enough.

Punitive damages are generally not recoverable in a negligence action because negligence—or a mere omission of the duty to exercise care—is the antithesis of willful or intentional conduct. *Hoover's Dairy, Inc. v. MidAmerica Dairymen, Inc./Special Products,*

24

*Inc.*, 700 S.W.2d 426, 435-36 (Mo. banc 1985). Moreover, because the remedy of punitive damages is so exceptional and severe, it should be applied only sparingly. *Rodriguez v. Suzuki Motor Corp.*, 936 S.W.2d 104, 110-111 (Mo. banc 1996). Clear and convincing evidence is evidence that "instantly tilts the scales in the affirmative when weighed against evidence in opposition; evidence which clearly convinces the fact finder of the truth of the proposition to be proved." *Peters v. General Motors Corp.*, 200 S.W.3d 1, 25 (Mo. App. W.D. 2006) (internal quotation marks omitted). "In a search for clear and convincing evidence, the circuit court must scrutinize the evidence in much closer detail than it does in cases in which the standard of proof is a mere preponderance." *Id.* (internal quotation marks omitted). Additionally, "[s]ubmission of a punitive damages claim to the jury warrants special judicial scrutiny because the instructional standards for punitive damages are necessarily general." *Alcorn v. Union Pacific R.R. Co.*, 50 S.W.3d 226, 247 (Mo. banc 2013), overruled on other grounds by *Badahman v. Catering St. Louis*, 395 S.W.3d 29 (Mo. banc 2013).

Again, the Centurion Defendants' conduct here falls short of this high bar. There is nothing to indicate they intended to harm Pace, and certainly no clear and convincing evidence that they engaged in malicious misconduct.

<u>CONCLUSION</u>

For all the above reasons, the Centurion Defendants respectfully request that the Court enter judgment as a matter of law in their favor.

25

SANDBERG PHOENIX & von GONTARD P.C.

By:    /s/ Dennis S. Harms

Dennis S. Harms, #58937MO
Alec D. Jarvis, #75617MO
701 Market Street, Suite 600
St. Louis, MO  63101-1826
314-231-3332
314-241-7604 (Fax)
dharms@sandbergphoenix.com
ajarvis@sandbergphoenix.com

*Attorneys for Defendants Centurion of Missouri, LLC, MHM Services, Inc., Anna Mefford, LPN, Cara Conner, LPN, and Nicole Townsend, LPN*

26

43588652.v1

## <u>Certificate of Service</u>

I certify that on this 27th day of July, 2026, this document was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Elizabeth A. Fegan
Pro Hac Vice
Timothy A. Scott
Pro Hac Vice
Georgia Jaye Zacest
Pro Hac Vice
Fegan Scott LLP
beth@feganscott.com
tim@feganscott.com
georgia@feganscott.com
*Attorneys for Plaintiff*

Thomas J. Porto
The Popham Law Firm
tporto@pophamlaw.com
*Attorney for Plaintiff*

/s/ Dennis S. Harms

43588652.v1